MYRTLE STILES v. THE STATE.

No. 6077.   Decided March 30, 1021.

Rehearing Granted April 12, 1922.

1.—Murder—Evidence—Bill   of   Exceptions—Contradicting   Witness—Rule
     Stated.

Where, upon trial of murder, the court permitted defendant to introduce defensive evidence showing the cruelty of deceased to defendant, extending over many years, as effecting her mental condition at the time she committed the homicide, there was no error in permitting the State to show that during said period of time; the witness had never seen any such cruel conduct, etc., although he had had opportunity to observe it, under the rule that when any facts material to the issue was introduced by one side, the other has a right to deny, contradict, or explain.

2.—Same—Argument of Counsel—Standing and Influence of Prosecuting Attorney.

Where, upon trial of murder, the attorney assisting in the prosecution stood high in influence among the citizens, and those who comprised the jury, and in his closing argument told them that if the deceased was the kind of a man that the defendant had testified him to have been, it would have been shown by the citizens of Kent County who were here as witnesses, and counsel knew that he was not that kind of a man. The same was reversible error, although the court had instructed the jury not to consider such remarks; as the same was obviously hurtful in spite of its withdrawal.

Appeal from the District Court of Fisher. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. H. Bledsoe,* and *L. B. Allen.*—On question of evidence: Maclin v. State, 144 S. W. Rep., 851; Price v. State, 43 S. W. Rep., 96; Holland v. State, 131 id., 563.

On question of Argument of counsel: Black v. State, 187 S. W. Rep., 332; Herrick v. State, 181 id., 759.

*R. G. Storey,* Assistant Attorney General, and *Stinson, Chambers, & Brooks,* for the State.—Cited Pierson v. State, 180 S. W. Rep., 1080. Sorrell v. State, 186 id., 336; Reiley v. State, 121 id., 1120.

LATTIMORE, JUDGE.—Appellant was convicted of murder in the District Court of Fisher County, and her punishment fixed at ten years in the penitentiary.

There appears in this record but two bills of exception, one to the reception of certain evidence, and one to certain argument of the prosecution, both of which we will discuss later.

Appellant was ably defended, and we take it this condition of the record resulted from the exceptionally fair and full charge of the court below, and the apparent willingness to allow in evidence all matters offered which, by any sort of reasonable inference, shed light on the issues involved.

Appellant was charged with the murder of her former husband.

The couple had lived together for a number of years and had two girl children, and were divorced about the year 1916. By court proceedings the custody of the children had been awarded to appellant during vacation, and to deceased during the school term, which latter was fixed by the terms of the court order to begin on September 1st of each year. The killing took place on September 1, 1918, at the home of appellant, to which deceased had gone to get said children in order to carry them to the place where he lived. It appears from the record that both parties to the tragedy, subsequent to their divorce, had married again, appellant having married a Mr. Stiles, who was present at the scene of the killing and in an adjoining room, but for some reason was not used as a witness. At the time of the homicide deceased had gone down to the house occupied by appellant and her husband and the two children in question, together with a number of roomers. He was accompanied to the premises by two other gentlemen, one of whom remained in the car in the street, and the other, a Mr. Mason, went into the front or reception room where he was sitting with Mr. Stiles at the time of the shooting. Mr. Mason testified that the door was open between the dining room, where deceased, appellant and the two children were at the time of and prior to the homicide; that at no time was there any loud talking or quarreling indulged in by any of the parties, and that the attention of the witness was first attracted to the fact that there was any trouble, by the first shot fired. There were in said building and in rooms adjacent to the dining room two or three young women school teachers, who also testified in the case, and stated that they heard nothing that attracted their attention prior to the shooting except that two of them said they heard part of a conversation between deceased and the little girls just a moment before the shooting, and heard one of the girls in substance ask deceased if they might not remain with their mother and he come to see them, to which deceased replied, in substance, that he lived too far away, and that he then said he was going up town and would be back soon and wanted them to be ready to start as they would have a long ways to go, and that this occurred just a moment before the first shot was fired. That appellant shot and killed deceased was not questioned. No one was in the room where the homicide occurred except the appellant, deceased, and the two children. Mrs. Stiles and the two children both testified to what had occurred during the marital life of appellant and deceased, relating numerous instances of misconduct on the part of deceased toward appellant, claiming that he had often assaulted her, had cursed her, choked her, spit in her face, and otherwise mistreated her. After the State and the defense had each closed its testimony in chief, the State introduced in rebuttal a Mr. Caruthers who testified that in 1908 he worked for deceased and appellant, and had visited them off and on up until 1916. As disclosed by a bill of exceptions taken by appellant, this witness was allowed to state that

he never knew of any trouble between appellant and deceased, had never seen deceased assault or strike appellant, nor heard him curse her, nor seen him spit in her face, nor choke her, nor had he heard of such incidents occurring. No separate objection was made to the last mentioned matter, but a general objection to all this evidence was to the effect that it was an attempt to contradict and impeach appellant and her two children. One of the daughters, testifying for the defense, went to the extent of saying that she had seen deceased strike or choke appellant almost every day.

It is well settled in this State that when any fact material to the issue is introduced by one side, the other has a right to deny, contradict or explain such testimony, showing its falsity or breaking its force and effect in any legitimate way. Mr. Branch in his Annotated P. C., Sec. 97, cites numerous authorities in support of this proposition. We suppose the trial court permitted appellant to introduce the defensive evidence just mentioned showing what she claimed to be the cruelty of deceased to her extending over many years, as affecting her mental condition at the time she committed the homicide. This being true, there would hardly seem room for argument over the proposition that if the State saw fit, it might cover all or any part of the same period by the testimony of parties familiar with the domestic life of the parties, negativing the facts as stated by appellant's witnesses. That the State was unable to cover every day or place of said period by such negative testimony, would not appear to be a valid objection to the admissibility of so much as was available to it. Probably no more common practice prevails than to prove by witnesses who were shown to have had opportunity to see and hear —that they neither saw nor heard the matters inquired about that might have occurred at such times or places.

By another bill of exceptions it is shown that when the attorney, who was assisting in the prosecution, was making his closing argument to the jury he said: "If Roy Winter was the kind of a man that the defendant has testified him to have been, it would have been shown by the citizens of Kent County, who were here as witnesses, and I know that he was not that kind of a man for I knew him." The trial court in his charge instructed the jury that this remark was improper and not justified by the evidence, and should not be considered by them in considering the case. Under our practice, where such charge is given, the only question is as to whether such remark be of such character as to make it obviously hurtful in spite of its withdrawal or attempted withdrawal by the court. We are unable to conclude from a careful consideration of this matter that this is entitled to a place among those cases where such obvious injury appears. As stated by Judge Davidson in Hardy v. State, 31 Texas Crim. Rep. 293, the remarks must not only be improper but must be of such material character, under the circumstances attending the particular case, as were calculated to injuriously affect the rights of the defend-

ant before the jury. In the case just mentioned the State's attorney said to the jury: "Gentlemen of the Jury: I was in the grand jury room when the witness America Huff testified before the grand jury last fall, and I tell you, Mr. Ledbetter and Mr. Hall are mistaken about her testimony. She testified the same as now." The effect of this statement clearly was to place before the jury the personal opinion of the State's counsel as to the reliability of a material witness for the State, but the judgment was affirmed, this court holding the remarks not to be of such prejudicial character as to call for a reversal. In Alexander v. State, 40 Texas Crim. Rep. 395, the prosecuting attorney in his closing argument said that he knew two of the State witnesses, and that they were worthy and truthful boys. The trial court verbally instructed the jury not to consider this remark, and this court holding that no error appeared, the case was affirmed. In the House case, 19 Texas Crim. App. 227, cited by appellant, the district attorney said to the jury: "The State of Texas might be raked over with a fine tooth comb and a more notorious character than the defendant John House could nowhere be found." The defendant's character had not been put in issue in that case, and it thus clearly appears that the prosecuting attorney was putting in the scales, the weight of his individual opinion. This court said: "If all such remarks were held reversible error, but few convictions would stand the test where the case had been hotly contested by able and zealous counsel," and the case was affirmed. In the Rahm case, 30 Texas Crim. App. 313, the prosecuting attorney said in the closing argument: "The defendant is a perjurer; that he swore as false as hell in another matter in this court." This would appear to be clearly the opinion and statement of the prosecuting attorney about a matter not in testimony. Judge White, speaking for this court, said: "Improper and unwarranted remarks of prosecuting counsel in argument, although always reprehensible, do not constitute cause for reversal unless under all the circumstances of the case they were calculated to prejudice the rights of the accused (Walker v. State, 28 Texas Ct. App. 503), and it seems a conviction will not be set aside for this cause unless the defendant requested and was refused an instruction directing the jury to disregard the unauthorized statements of counsel for the State. Young v. State, 19 Texas Ct. App. 536; Kennedy v. State, id., 618; Willson's Crim. Stats., sec. 2321." The remark of the prosecuting attorney in this case was that deceased was not the kind of man appellant had testified he was,—else it would have been shown by citizens of Kent County who were witnesses. We know of no authority which could be construed as holding this part of said remark such as would be error. There were a number of citizens of Kent County shown by the record to have been witnesses; they all knew deceased; none of them were asked as to his character affecting any of the matters charged against him by his wife and daughters. The attorney also included in said remark that de-

91 Tex.—30

ceased was not the kind of man appellant had testified he was, for he knew him. To hold such expression of the opinion of an attorney, per se, ground for reversal, and that too, after the trial court had instructed the jury it was improper and should not be considered by them, would be to overturn the doctrine of the cases above cited, whose judgments were rendered by men whose matured decisions have commanded the respect of the bench and bar of our country, and would be going further than any of the citations with which we are familiar, and further than we think reason or justice would demand. While appellant and her daughters had attributed to deceased a course of conduct toward her which was seriously objectionable, and the existence of which seemed thus doubted by the attorney addressing the jury, still such course of conduct had occurred long before the homicide in question, and was not a matter so material thereto as to make the remark of said attorney so obviously hurtful as to call for a reversal. The theory of the appellant seems mainly to turn upon the proposition of the defense of the children against an unlawful attack upon them by their father, and this attack consisted, according to the defense, in the fact that after attempting to persuade them to go with him, he took each of them by the hand or arm and started with them towards the door, at which time, according to the uncontradicted evidence, appellant took from its place in the corner of the kitchen a shotgun and shot deceased twice, and after he had fallen or partly fallen to the floor, she procured a Winchester rifle and shot him twice through the body with that. It was not claimed that during the existence of the marital relation between appellant and deceased, or at any time thereafter, nor during the time deceased had the custody of the two children in question, that he had been guilty of any violence or mistreatment of them, and inasmuch as the only violence attributed to him on the occasion of the homicide was that mentioned above, we would hardly think the expression of opinion by said prosecuting attorney, referring to what the defense claimed to have been the conduct of the deceased years before, could be such hurtful matter as to justify the setting aside of this judgment. As said by Judge Davidson in Tweedle v. State, 29 Texas Crim. App. 591: "Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause.

The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. House v. State, 19 Texas Ct. App. 227; Bass v. State, 16 Texas Ct. App. 62."

What we have just said disposes of the two bills of exception which appear in the record. We are unable to conclude from the case as

presented here that the jury was not justified in their verdict. Aside from the testimony of appellant and her two little daughters, the testimony of the disinterested witnesses seems to indicate that deceased was guilty of no misconduct on the occasion in question except that he went to the home where his divorced wife was living with her husband, and attempted to induce his children to accompany him back to his home, in accordance with the judgment of a court of competent jurisdiction awarding him their custody. He is not shown to have gone to said house in a hasty or boisterous manner, or to have carried any arms, nor do said witnesses testify to any language or conduct on his part which in any way justified the shooting. The matter of the credibility of the witnesses is one which has been referred by our law to the jury, and they have seen fit in the exercise of their power to give credence to the witnesses for the State, and we do not feel justified in disturbing their finding.

No error appearing in the record the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

April 12, 1922.

LATTIMORE, JUDGE.—Appellant's contention that the argument of private prosecutor, Hon. James P. Stinson, in his closing argument to the jury, was of such injurious character as to necessitate the granting of a rehearing and the reversal of this case, has given us no small concern and caused us to review many authorities, which has of necessity delayed handing down this opinion. The remark objected to is set out in our original opinion. That the maker of the argument was a man of much standing and influence among the citizens comprising the jury, would seem likely to enhance the probability of hurtful consequence. Appellant was seeking to claim manslaughter among other defenses to a charge of killing her former husband. Her mental attitude at the time of the homicide was material. It, in part, may have been based on what she and her daughters claimed was the past conduct of deceased. The testimony, however, in argument before the jury of one in whose word the jurors had confidence, of the fact that he knew that deceased was not the kind of man he had been pictured, for he knew him,—was susceptible of the influence of much weight in combatting the claims of the defense. If deceased was not the kind and character of man as shown by the testimony of appellant and her daughters, such fact would go far toward disproving the theory of appellant.

Without discussion of the authorities, which are numerous and may be cited both pro and con, we have concluded it our duty in arriving at a solution of this matter to give to appellant the benefit of the doubt which is in our own minds. The rehearing will be

granted, the affirmance set aside, and the judgment reversed and cause remanded for another trial.

*Reversed and remanded.*