## SAM NAMI V. THE STATE.

No. 16932.   Delivered December 12, 1934.
Reported in 77 S. W. (2d) 528.

The opinion states the case.

*J. Franklin Spears* and *Frank Vaughan,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is conspiracy to commit

theft; the punishment, confinement in the penitentiary for two years.

Louis Shaffer, who lived in Cuero, had been acquainted with appellant and Jack Kennedy for several years. The State's proof was, in substance, as follows: Sometime in July, 1933, Kennedy went to Cuero ostensibly for the purpose of inducing Shaffer to engage in making counterfeit money. Eventually Shaffer went to San Antonio where he was taken to appellant's home by Kennedy. At this meeting appellant advised Shaffer that he knew a man who could make counterfeit money. Shaffer became interested and on other occasions talked to Kennedy and appellant about the matter. In August, 1933, appellant introduced Shaffer to Charley Meyer. Meyer agreed to show Shaffer how he made counterfeit money; and, taking some of Shaffer's currency, he proceeded to wash it and place it in a press, and apparently made some counterfeit bills. Later Shaffer delivered Meyer $1900 in currency, which Meyer placed in a press in Shaffer's room at the hotel. Meyer then left Shaffer alone in the room. In a little while Shaffer received a telephone call to come to the bus station. Leaving his $1900 in the press in his room, he went to the station but found nobody waiting for him. When he returned his money had been taken. Meyer had disappeared and he never saw him again. He reported the matter to appellant, who appeared to be terribly outraged and assured him that he would help him get his money back. However, appellant advised him to report that he had lost some clothing, saying that if the true facts were disclosed all of the parties would be arrested for counterfeiting. Pursuant to this advice, Shaffer told the authorities that he had lost some clothing, a watch and three twenty dollar bills. Appellant stated to Shaffer that if Meyer did not pay him back his money he (appellant) would. Shaffer returned to Cuero and several weeks thereafter appellant came to see him and told him that he had a telegram from Meyer from Monterrey, Mexico, in which Meyer stated that he had lost everything on the stock market but would see appellant and Shaffer at the earliest possible moment. Appellant also told him that the telegram was evidence of the fact that Shaffer did not get the money. Shaffer requested appellant to keep in touch with Meyer as he wanted to get some counterfeit money. Several weeks later appellant made another trip to Cuero and met Shaffer. On this occasion he advised Shaffer that there were two men in San Antonio who had some counterfeit money and a 1933 Chevrolet coupe they wanted to sell for $350. He asked Shaffer if he wanted to meet the

parties and Shaffer replied in the affirmative. Appellant then returned to San Antonio. Sometime in October, 1933, Shaffer went to San Antonio and met appellant. Appellant pulled out a newspaper and showed him a news item to the effect that two men having counterfeit money had been arrested in an automobile parking lot where they were trying to steal a secondhand automobile. Appellant said these were the men he intended to introduce Shaffer to. Shaffer then went back to Cuero. In about three weeks appellant again came to Cuero and advised Shaffer that Meyer was sending a man from Mexico to San Antonio who would sell him (Shaffer) some counterfeit money. Shaffer returned to San Antonio and appellant introduced him to B. J. DeGraffenreid, telling him that Charley Meyer had sent DeGraffenreid from Mexico with counterfeit money. Shaffer told DeGraffenreid that he would take $800, but DeGraffenreid replied that he could not sell less than $1000. Finally, appellant said he would furnish $200 in money. It was agreed that the parties would meet in Shaffer's room at the hotel. In the meantime, Shaffer advised the authorities of the transaction and officers were sent to his room. When appellant and DeGraffenreid entered the room the officers arrested them. Upon searching DeGraffenreid they found in his possession blank pieces of paper the size of one dollar bills.

It was not shown that DeGraffenreid was a participant in the transaction of August, 1933, when $1900 was stolen from Shaffer. In that transaction the State's proof was to the effect that Jack Kennedy, Charley Meyer and appellant were co-actors, the theory of the State being that said three parties conspired to steal $1900 from Shaffer, and that pursuant to their agreement, the money was taken in the manner hereinbefore shown. Prior to the present trial indictments had been returned against Kennedy, Meyer and appellant charging them with the theft of $1900. It was not upon that transaction that appellant was upon trial, but for the second transaction, out of which an indictment was returned charging appellant and DeGraffenreid with conspiracy to steal $1000 from Shaffer.

Touching the second transaction, Shaffer testified, upon his cross-examination, that after his $1900 had been stolen he told appellant to keep in touch with Meyer. He testified further that his reason for so advising appellant was that he was trying to entrap appellant, Meyer and Kennedy. We quote from his testimony, in part, as follows:

"I told Sam (appellant) to keep in touch with me as I wanted to get some of that money (referring to counterfeit

money). I had a reason to do that. That is relating to October, 1933, but I did not intend at that time to buy any money, but what I was trying to do was to trap this fellow Meyer and the whole damn bunch in their own game. I told Sam to keep in touch with Meyer as I wanted to get some of that money. At the same time I knew there was no such thing as counterfeit money, but they tried to make me believe they did have it and I figured that I would get Meyer, Sam (appellant) and the whole bunch and everybody that led me into this trouble. Then I decided upon a scheme where I would trap them all and after I had done that I told Sam to keep in touch with Meyer and I told Meyer, or rather I told him to tell Meyer, that I wanted to buy some of that money, but I did not intend buying any of it. I never did believe anything they told me after the first transaction; that they ever had any money and I would not have parted with my money and I did not bring any up here and I would not have parted with any regardless of what they would have told me, as I just wanted to trap them."

Testifying for the State, Jack Kennedy, who was under indictment in the first transaction charging that he stole $1900 from Shaffer, corroborated Shaffer's version to the effect that he (Shaffer) had been induced to come to San Antonio by Kennedy at the instance of appellant upon the promise that he (Shaffer) could secure some counterfeit money, and that it was through negotiations with appellant, Kennedy and Meyer that he was led to place his $1900 in the money press. The court submitted to the jury the issue as to whether the witness Kennedy was an accomplice. Appellant timely and properly excepted to the charge for its failure to instruct the jury that said witness was an accomplice as a matter of law. Moreover the charge was excepted to because the jury were not advised therein that before they could consider the collateral crime of theft involved in the first transaction against appellant in determining his guilt in the case on trial, they must believe beyond a reasonable doubt that appellant was guilty thereof. The opinion is expressed that the court should have responded to the exceptions.

In Lankford v. State, 248 S. W., 389, Lankford was on trial for possessing intoxicating liquor for the purpose of sale. The transaction upon which the State relied occurred in February, 1922, at which time officers found in Lankford's office a large quantity of whisky. As bearing on the issue of the purpose for which he possessed said whisky, the State proved by three witnesses that they had purchased liquor from Lankford in 1921,

at dates prior to November 15, on which day the amendment to the Dean Law went into effect, exempting purchasers of intoxicating liquor from being held as accomplices when testifying against parties who had sold such liquor. As to the sales made by Lankford prior to the date last mentioned, the purchasers would have been accomplices had Lankford been on trial for making such sales. The trial court refused to instruct the jury that said witnesses to the purchase of liquor prior to the 15th of November, 1921, were accomplices, and further declined to advise the jury that before they could consider the collateral crimes against Lankford they must believe beyond a reasonable doubt that he was guilty thereof. In concluding that the matter presented reversible error, this court, speaking through Judge Lattimore, used language as follows:

"It is the settled law in this State that when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof. This has been held to be the correct doctrine as applicable to collateral forgeries, thefts, and other crimes, and we can see no sort of reason for attempting to draw a distinction between the application of said rule in other felony cases and the one now under consideration. If it be true that the jury must be instructed as to a collateral theft or forgery or other collateral crime under our established decisions, that they must believe that guilt of the accused in such collateral crime has been shown beyond a reasonable doubt before same can be considered against him in determining his guilt in the case on trial, then the same rule is applicable here, and the jury should have been told that they could not consider as a guilty circumstance appellant's selling intoxicating liquor in violation of law on the dates named, unless such guilt was shown by legal evidence beyond a reasonable doubt. For authorities supporting our position see Fry v. State, 78 Texas Crim. Rep., 435, 182 S. W., 331; Fry v. State, 86 Texas Crim. Rep., 73, 215 S. W., 560; Martin v. State, 36 Texas Crim. Rep., 632, 36 S. W., 587, 38 S. W., 194; Ham v. State, 4 Texas Crim. App., 645.

"In our opinion the contention of appellant is sound as reflected by his bills of exception to the refusal of the trial court to instruct the jury that the purchasers of such liquor prior to the 15th of November, 1921, were accomplices, and the jury should have been told that they could not consider against this

appellant the fact that he had made such sales unless his guilt of such crimes had been shown beyond a reasonable doubt by legal and competent testimony."

It is observed that it is not clear from the testimony of Shaffer whether he or appellant initiated the second transaction which resulted in the alleged conspiracy between appellant and DeGraffenreid. According to the testimony of Shaffer, on cross-examination, which we have heretofore quoted, after $1900 had been stolen from him he determined to keep in touch with Meyer and to enter into further negotiations with appellant and Kennedy, ostensibly for the purpose of purchasing counterfeit money, but in truth for the sole purpose of entrapping the parties and having them arrested. As pointed out, Shaffer testified that he did not believe said parties had any counterfeit money; that he would not have believed anything they told him; that he had no money to deliver to them, and did not intend to purchase counterfeit money or part with any of his own money. Appellant excepted to the charge of the court for its failure to embrace an instruction to the effect that he should be acquitted if the jury entertained a reasonable doubt as to whether Shaffer initiated and brought about the conspiracy between appellant and DeGraffenreid to steal his (Shaffer's) money. We think the exception was well taken. We quote from Johnson v. State, 3 Texas Ct. of Apps., 590, as follows:

"In the case now before the court, it will be borne in mind that the offense is complete under the indictment when it is shown that defendant had actually entered into an *agreement* with N. S. Hand to burglariously enter the house described in the indictment, in the manner as therein alleged, with intent to commit a theft, and that the offense of conspiracy is complete although the parties conspiring do not proceed to effect the object for which they have so unlawfully combined. The fact of such conspiracy once being established, the subsequent consent of the owner (or those acting for him) for the conspirators to enter the building will not affect their guilt in the least, *unless the evidence shows that Higgins and Garwood, or the detective employed by them, suggested the offense, or in some way created the original intent or agreement to commit the offense as charged.*" (Italics ours).

In reversing the judgment of conviction in the case of Connor v. People, 25 L. R. A., 341, the Supreme Court of Colorado approved the doctrine announced in Johnson's Case, supra. Connor was charged with conspiring with others to steal property belonging to a railroad. The proof on the part of the State

showed that the railroad company, acting through a detective, initiated the conspiracy, and that after the detective had determined upon his plans, they were approved by the company, whose agents agreed that the company's property should be taken in order that the offenders might be arrested. It appears that the plan was to secure the arrest of Connor and his companions on the theory that they had committed other robberies. As already stated, the conviction was for the substantive offense of conspiracy and not for the offense of theft. In reaching the conclusion that the conviction could not stand, the court reviewed numerous authorities, among them being Speiden v. State, 3 Texas Apps., 156, in which it was held that a defendant who had entered a bank at the solicitation of a detective rightfully in possession, with the consent of the owner, could not be guilty of burglary with intent to commit theft. The holding was based upon the proposition that consent will take away the criminal quality of the act where the want of consent is an essential ingredient of the offense. After referring to such doctrine, the court used language as follows:

"Counsel for the people concede the soundness of the doctrine as above announced, but seek to escape its application upon the ground that the plaintiffs in error were not prosecuted for stealing from the railway company, and therefore the attitude of the company made no difference. In other words, it is contended that the conspiracy to do an act constitutes a crime, although the act to accomplish which the conspiracy is formed would not be unlawful if committed. To state the proposition is to refute it."

In Bush v. State, 151 S. W., 554, this court, speaking through Presiding Judge Davidson, used language as follows:

"Wherever a party deliberately or intentionally originates or succeeds in bringing about a violation of the law, he becomes a particeps criminis of that violation, and therefore when used as a witness must be corroborated. There is a line of cases which holds that where an officer or other parties understand or are led to believe that a violation of the law is in contemplation, and take steps to detect that crime, or get evidence by which the guilty parties may be punished, he would not be an accomplice, but in such cases he is not an original party to the bringing about the crime and is not guilty of originating or initiating it. In that character of case his connection with it is after the inception of the crime and after it has been determined upon, and he only then gets into it as a detective or for the purpose of arresting the party and bringing to punishment.

There is another line of cases which holds that, where the party originates the crime or is instrumental in its initiation and brings it about, he then becomes a particeps criminis and when testfying as a wtness in the case is an accomplice. The leading cases in this State are Dever v. State, 37 Texas Crim. Rep., 396, 30 S. W., 1071; Steele v. State, 19 Texas App., 425. The opinion was by Judge Hurt and draws the distinction above mentioned between parties who were playing the role of detective for the arrest and punishment of parties, and those who originate the crime or assist in originating it in the first instance."

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.