GEORGE W. HUNTRESS, JR., V. THE STATE.

No. 17834.   Delivered January 22, 1936.
Rehearing Denied June 3, 1936.

The opinion states the case.

*D. A. McAskill, T. J. Newton, Van Henry Archer, Forrest Bennett,* and *Dave Watson,* all of San Antonio, for appellant.

*John R. Shook,* Criminal District Attorney, *Paul J. Kilday,* First Assistant Criminal District Attorney, *L. J. Gittinger* and *Leroy Jeffers,* Assistant Criminal District Attorneys, all of San Antonio, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is misapplication of county funds; the punishment, confinement in the penitentiary for two years.

Appellant was county clerk of Bexar County, having qualified for the term beginning January 1, 1933, and ending December 31, 1934. W. R. Beaumier was one of his deputies, and kept the books of the office. Beaumier testified, in substance, as follows: During appellant's campaign for the Democratic nomination to the office during the summer of 1934, he (appellant) used for campaign purposes funds belonging to the office in the sum of approximately $740. The witness and appellant executed a note payable to the Alamo National Bank in the sum of $750, which amount appellant used in paying part of his assessment to the Democratic Executive Committee. Late in 1934 it became evident that fees collected by the office were in such an amount that appellant would be required to pay into the treasury of the county a large sum as excess fees of office. Appellant and the witness entered into an agreement that they would draw checks upon the office funds upon the pretext of paying a bonus to certain employees and would deliver same to said employees, provided they would agree to pay back for the use of appellant the major portion of the proceeds of said checks. Acting for appellant, the witness approached certain employees and they became parties to the agreement. Thereafter the witness, acting as appellant's deputy, executed the checks and delivered them to said employees, who, in turn, delivered to the witness for the use of appellant the major portion of the proceeds of said checks. Julian Smith, one of the deputies, received from the witness a check in the sum of $500. Smith indorsed the check and delivered it to the witness. Pursuant to his agreement with appellant, he (the witness) took the check to the Alamo National Bank and used it to pay the balance of $500 remaining unpaid on the note heretofore mentioned.

The prosecution was predicated upon the transaction in which Smith was involved. It appears from the record that the checks Beaumier delivered to appellant's deputies were executed by Beaumier, as deputy clerk. It does not appear that appellant indorsed any of said checks. The check of Julian Smith, which Beaumier used to pay the note heretofore mentioned, was indorsed by Julian Smith and Beaumier. Other than the testimony of Beaumier and the deputies who entered into the agreement referred to in Beaumier's testimony, the State relied upon circumstantial evidence to connect appellant with the alleged offense.

At the time of the trial Beaumier had been indicted for his participation in the transaction, and the trial judge charged

the jury that he was an accomplice witness as a matter of law. As to the other deputies. who testified to having participated in the transaction, the court declined to instruct the jury that they were accomplice witnesses as a matter of law, but submitted the matter as an issue of fact. Appellant timely and properly excepted to the charge, suggesting in the exception that the court should not submit to the jury the question as to whether the witnesses were accomplices, but should instruct that they were accomplices as a matter of law. The opinion is expressed that the exception was well taken. When applied to evidence, the term "accomplice" means a person who, as a principal, accomplice or accessory, is connected with the crime by an unlawful act or omission on his part, transpiring either before, at the time of, or after, the commission of the offense, and whether or not he was present and participated in the crime. Dooley v. State, 7 S. W. (2d) 96; Haynes v. State, 18 S. W. (2d) 1081; Benavides v. State, 60 S. W. (2d) 436. That the deputies who received the checks in question and paid back part of the proceeds to Beaumier did so for the purpose of aiding appellant to use the money for his own benefit was uncontroverted. Beaumier, as well as said deputies, including Smith, testified that they had previously agreed to participate in the transaction to the end that appellant might receive the benefit. Under the circumstances, said witnesses were accomplices as a matter of law, and the jury should have been so instructed.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State, through the Criminal District Attorney of Bexar County, has filed a motion for rehearing insisting that we were wrong in our conclusion that the deputies who participated in the transaction were accomplice witnesses as a matter of law. A careful review of the question has not led us to believe we were in error in so holding. Recognizing that in some instances it has been held that although the evidence shows a witness to be an accomplice witness as a matter of law it is not reversibly erroneous to submit the ques-

tion as an issue of fact to the jury, we are inclined to the view that we should not so hold under the evidence here presented. Unless we are confused by the somewhat voluminous facts, it appears that if appellant can be held guilty at all under the present record of converting funds of Bexar County to his own use it would be through a scheme of rebating with certain of his deputies, by which scheme certain deputies were to be paid what was called a "bonus" in an amount over their contract salary of employment, but within the maximum amount allowed by the Commissioners' Court for salary, upon condition that a part of such "bonus" payment be returned to appellant. It is true the particular transaction upon which the prosecution was based was a rebate of $300 from a deputy by the name of Julian E. Smith, but in order to establish the scheme claimed by Beaumier to have been entered into by him and appellant the State also used as witnesses the other deputies who had also given appellant rebates. The transactions with the other deputies were admitted in evidence as bearing upon the probability of appellant's guilt, and the jury was told in substance that they could not consider such testimony unless they believed from the evidence beyond a reasonable doubt that such transactions occurred, and yet, in an endeavor to establish the transactions the State used the deputies who were parties thereto and chargeable by law with knowledge that the rebate was unlawful. We see no escape from the holding that they were accomplice witnesses as a matter of law under the facts as we understand them. See Nami v. State (Texas Crim. Rep.), 77 S. W. (2d) 528; Lankford v. State, 93 Texas Crim. Rep., 442, 248 S. W., 389.

The State in its motion for rehearing suggests that other questions brought forward by appellant should be passed upon in view of another trial. Appellant has joined in such suggestion and especially stresses the proposition that application should be given of Art. 1656a Rev. Civil Stat., as passed by the 43rd Legislature, Ch. 98, p. 217, which was in effect in December, 1934, at the time of the alleged offense. Said article provides in substance that in counties of 190,000 or more in population the county auditor shall prescribe the system in the collection and disbursement of county revenues, fees, etc., and then proceeds as follows:

"Should the County Auditor deem it to be to the best interest of the county or deem it necessary in order that the provisions of this law may be better enforced or in order that the legislative intent to conserve the funds be carried out, he

shall have the right to prescribe that all of the fees and moneys herein referred to shall be turned over to the County Treasurer by such officer as collected, and such money shall be deposited in the county depository in a special fund to the credit of such officer and draw interest for the benefit of the county, which funds, when so deposited in such depository, shall be secured by the bond of such depository. Thereafter the officer may draw checks on the County Treasurer to disburse said funds in the payment of salaries and expenses authorized by law or in the payment of accounts of the individuals to whom said funds may belong. The treasurer and the depository shall make no payment unless such check is countersigned by the County Auditor. This provision shall not in any wise change the ownership of any fund so deposited except to indemnify said officer and his bondsmen or other owners of such funds for such funds during the period of deposit with the county."

It is appellant's contention that the County Auditor of Bexar County had assumed to act under the provision of the law just quoted, and had directed appellant to deposit in the county depository the fees coming into his hands, and that the funds from such fees had passed out of the possession of appellant, and that the checks drawn on the fund were improperly paid as not having been drawn as required by the law in question. If this were true the case of Reynolds v. State, 92 S. W. (2d) 458 would appear to have direct application. The record before us does not bring the case under the statute quoted. Counsel both for the State and appellant in their briefs seem to proceed on the assumption that the National Bank of Commerce of San Antonio was the designated County Depository of Bexar County. It may have been, and all parties concerned may have so understood it, but if there is any proof to that effect in the record before us we fail to find it. It may have been overlooked in the somewhat voluminous statement of facts. The nearest approach to it discovered by us is in the testimony of Mr. Beaumier, in which he says: "We got an order in October or November, 1933, I believe, from the County Auditor to deposit our money in the National Bank of Commerce." This falls far short of showing that the County Auditor had undertaken to exercise his discretion under Art. 1656a, and had directed appellant to turn money in his hands as County Clerk over to the County Treasurer, who in turn should place it in the County Depository in a special fund to the credit of appellant, after which, in order to disburse such money, appellant was required to draw checks on the County Treasurer,

and even then the Treasurer and County Depository should make no payment of such check unless it was countersigned by the County Auditor. The point urged by appellant that his conviction should be set aside because of the claimed operation of Art. 1656a cannot be sustained. We do not intend to convey the impression that our holding would be otherwise if the record showed that the National Bank of Commerce of San Antonio was the County Depository, with no further showing save that the County Auditor had directed appellant to deposit money in his hands in said bank. This same question was before the Court of Civil Appeals at San Antonio in Huntress, County Clerk, v. State, ex rel, 88 S. W. (2d) 636. An application for writ of error to the Supreme Court of Texas was dismissed for want of jurisdiction on January 8, 1936. We gather from the opinion of the Court of Civil Appeals that the record before them was more complete upon the point discussed than is found in the record before us. We observe no ground for criticism of the conclusion announced by said court upon the question.

The motion of the State for rehearing is overruled.

*Overruled.*