## H. B. Opp v. The State.

No. 18491. Delivered December 16, 1936.
State's Rehearing Denied April 7, 1937.

The opinion states the case.

B. W. Smith, of San Angelo, H. N. Graves, of Georgetown, J. H. Baker, of San Saba, Alfred Mueller, of Llano, Thos. C. Ferguson, of Burnet, and Dan Moody, of Austin, for appellant.

Carlos C. Ashley, District Attorney, of Llano, F. H. Hammond, Ben King, and Henry Crawford, all of Burnet, Herman Toepperwein, of Menard, Critz & Woodward, of Coleman, and Lloyd W. Davidson, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for thirty years.

The appellant was convicted of the murder of W. R. Tomlinson. The indictment was filed in Menard County but the case was tried on a change of venue in Burnet County. The appellant was sentenced on February 15, 1936, on which date the court adjourned.

A summary of the evidence is as follows: Appellant owned a tract of land in Menard County known as the "Brown Ranch" the north part of which was occupied by Tomlinson as a sheep

ranch under a written lease from November 1, 1933, to October 31, 1934. According to the evidence, about November 10, 1934, the appellant stated to J. T. Jackson, Jr., that the lease of the deceased had expired, that deceased would not vacate the land and that appellant needed it for pasturage. Jackson was told by appellant that he had consulted a lawyer, who advised him that he would have to go to the ranch with an officer and remove the stock of the deceased therefrom.

Carol McDonald, a son-in-law of deceased, testified that in August, 1934, he and deceased went to San Angelo and had a conversation with the appellant relative to the occupancy of the leased premises and that deceased offered to pay appellant sixty cents per acre for leasing the north half of the Brown Ranch for another year, which proposition was accepted by appellant. In the latter part of October, 1934, deceased met appellant at his home in Menard and offered him a draft in payment of rent for the first six months of the year, and appellant stated that he had not rented the premises to deceased for another year. Deceased called appellant a liar and appellant refused to accept the draft.

There was introduced in evidence an envelope on which appeared the address of the deceased and which was indorsed as follows:

"From H. P. Opp, Roberts Hotel, San Angelo, Texas."

The envelope contained a typewritten letter which read as follows:

"As I have been unable to arrange for a pasture for my sheep * * * I am going to have to ask you to deliver to me the North part of the Brown Ranch now held by you under verbal lease from me.

"This will be your notice to vacate this pasture by November 1, 1934."

The deceased owned a section of land adjoining the Brown Ranch, and there was a "bump gate" in the fence between the two tracts of land. The home of the deceased was on his section of land and about one mile north of the bump gate.

On the morning of the tragedy, the deceased made an unsuccessful attempt to use his telephone. He then armed himself with a sawed-off twelve-gauge shotgun and shells, and went in an automobile, together with his son, from his home, through the bump gate, and into the Brown Ranch. Upon approaching the place he found the appellant and his companions. Deceased stopped his car and got out. Trimble, a companion of the appellant, was standing near an automobile with a rifle in his

hand, at a point about fifty feet from deceased at the time. The deceased told Trimble to get off his premises; that he did not want him there. Deceased then told his son Louis to get out of the automobile and see if he could locate the sheriff. Louis Tomlinson had gone some fifty steps beyond the bump gate when his attention was attracted by loud talking. Upon looking back he saw Trimble standing with his rifle pointed towards the deceased. The deceased turned his back and started towards his car when the shooting began. Deceased was on the east side of his car and then went around on the west side, after which he walked back and through the bump gate. As he did so shots were fired from Trimble's direction and the deceased fell wounded. The witness Tomlinson testified that after his father had fallen he saw the appellant going from one car where Trimble had been standing to another car where Trimble had stood, and that appellant had a gun in his hand at the time. The witness declared that during the difficulty he saw his father with a sawed-off shotgun in his hand; that he heard the reports of both rifle and shotgun shots. Other men besides appellant and Trimble were seen by the witness but he did not know who they were.

Doctor Leggett, who examined the deceased shortly after the homicide, testified that the deceased had a bullet wound above his right eye; that there was no point of exit. The witness said that this wound completely paralyzed the body and would cause the deceased to fall immediately. The deceased also had a wound in the right shoulder, two oblong wounds above the knee about two and one-half inches apart, two wounds in the crotch, and one wound on the right side of the neck just back of the ear. The deceased had also been shot in the bottom of the shoe while lying on his back, the bullet coming through part of the big toe and the one next to it. The doctor accompanied the deceased in the ambulance to San Angelo where the deceased died in a hospital about thirty hours after he was brought there.

Bill of Exception No. 75 relates to the appellant's objection to the remarks of one of counsel for the State in his argument to the jury. It is the State's theory that a parol agreement between deceased and appellant extending the term of a lease of appellant's pasture to the deceased had been made and that in violation of the agreement the appellant took possession of the leased premises and was preparing to remove therefrom the sheep of the deceased. Carol McDonald, a witness for the State, testified that he was present and heard the appellant and de-

ceased verbally enter into a contract extending the term of the lease in question. McDonald testified that he, the appellant and deceased were the only persons present when the agreement extending the lease was made. Appellant did not testify upon the trial. Referring to said contract, one of counsel for the State, in his argument, addressed the jury as follows:

"There was a clause in that contract that gave them the right to renew their lease if the property should be for lease at the end of the lease period. Then, making provision for the future, they (deceased and McDonald) go to San Angelo and there they have a conversation with H. B. Opp. I am saying that, Gentlemen of the Jury, because I believe it is true, I believe what Carol McDonald said was true. You have no right to disbelieve it. He is unimpeached. NO MAN HAS CLIMBED ON THAT WITNESS STAND AND SAID IT ISN'T SO, HE IS WORTHY OF BELIEF, IT IS UNDISPUTED AND UNDENIED. He said they went there and had a conversation with Mr. Opp, and that Mr. Opp said, 'I UNDERSTAND YOU ARE PAYING SIXTY CENTS FOR PASTURE ON THE SOUTH HALF AND I THINK I OUGHT TO HAVE SIXTY CENTS TOO. YOU SEE YOUR LOAN COMPANY AND SEE IF YOU CAN'T PAY ME THAT'. And Mr. Tomlinson told him, 'I DON'T HAVE TO SEE MY LOAN COMPANY, I WILL PAY YOU SIXTY CENTS, and Mr. Opp said, 'ALL RIGHT.' NOW THAT MAKES A CONTRACT AND THAT IS UNDENIED." (Emphasis ours).

It is the claim of appellant's counsel that the argument constituted a reference to the failure of the appellant to testify, and that in refusing to sustain the objection to the remarks of counsel above set forth reversible error was committed. There are numerous instances in which it has been found necessary to reverse the judgment for a violation of the mandate of Art. 710, C. C. P., which reads as follows:

"Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause * * *."

Among the cases are those in which, like the present, the comment or allusion consisted in calling attention of the jury to the fact that certain testimony had been given and that the accused did not deny it. See Pirtle v. State, 10 S. W. (2d) 564, and authorities cited. In some of the cases collated the language used in argument was in substance the same as the verbiage under consideration, namely, "No man has climbed on that witness stand and said it isn't so."

In view of the treatment of Bill of Exception No. 75 in which the mandate of the statute conferring upon one accused of crime the privilege of silence has been transgressed, we are constrained to declare that the judgment cannot be affirmed without violence to the mandatory provision of Art. 710, supra. A citation of many cases upon the subject is pretermitted for the reason that the reports of the State are replete with examples in which the reversal has been declared upon a state of facts in no substantial manner deviating from those which are before the court in the present instance.

Relative to Bills of Exception Nos. 2, 3, 23, 30, 45, 46, and 47, we take the following summary from the brief of the appellant's counsel:

"These Bills of Exception complain of the action of the Trial Court in permitting the State to introduce testimony that a telephone line running from the town of Menard to the home of deceased and other homes in the community where deceased lived had been cut at some hour between late afternoon on November 26, 1934, and the morning of November 27, 1934 (the day of the difficulty), and in failing to give requested charges instructing the jurors not to consider such testimony unless they believed beyond a reasonable doubt that the Appellant was in some way responsible for or connected with the cutting of the telephone line.

"In substance, the testimony complained of was that on the evening of November 26, 1934, John Treadwell, whose telephone was on the same line as the telephone in the home of the deceased, used his telephone and obtained connection with the central station at Menard, but could not obtain such a connection on the morning of November 27, 1934; that on the morning of November 27, 1934, the deceased and his son Louis Tomlinson attempted to use the telephone in the home of the deceased, but could not get a connection with the central station at Menard; that on the morning of November 27, 1934, after the hour of the difficulty, M. H. Leverett, manager of the telephone office at Menard, found that the telephone line running from Menard to the home of the deceased and other homes in that community had been cut at a point about sixty (60) feet off from the Menard-Ft. McKavitt road. The only testimony to connect the Appellant with the cutting of the telephone line was the testimony that he and four or five others on the night of November 26, 1934, had traveled in automobiles from Menard to the Opp ranch, and that this ranch was about fifteen miles West of Menard on the Menard-Ft. McKavitt highway.

There was no competent testimony to show that Appellant was connected with the cutting of the telephone line, or even that he traveled on the Menard-Ft. McKavitt road on the night of November 26, 1934.

"Appellant objected to the introduction of testimony concerning the condition of the telephone line because it was immaterial and irrelevant, and because it was hearsay to him, for it had not been shown that he had any knowledge of the condition of the telephone line or that he was in any way connected with or responsible for it. Appellant objected to testimony that the telephone line had been cut because such testimony involved proof of an extraneous offense. The Appellant's objections were overruled and he reserved Bills of Exceptions to the rulings of the court as shown by the above bills. Appellant requested charges that such testimony could not properly be considered unless the jury believed from the evidence beyond a reasonable doubt that appellant was responsible for the condition of the telephone line."

We are in accord with the contention of the appellant's counsel to the effect that the evidence embraced in the bills of exception, if introduced, should be accompanied by an instruction adequately advising the jury that the matters contained in the bills should not be received or considered by them as evidence against the accused unless the jury believed from the evidence, beyond a reasonable doubt, that the appellant, or some one acting with him, was responsible for the condition of the telephone line.

Several bills of exception relate to acts on the part of Fred Opp in the absence of the appellant in an effort to secure a gun. Against this testimony objection was made by appellant on the ground that it was hearsay. The relationship of Fred Opp to the appellant, H. B. Opp, and the proven circumstances touching his *aid in providing arms for the appellant,* to say nothing of his close relationship and association with the appellant, are regarded as sufficient warrant for the introduction in evidence of the testimony in question. After the homicide, officers went to the home of the appellant and advised him that they desired to obtain the gun which he had at the scene of the homicide, whereupon the appellant told his son, Fred Opp, to get the gun, which order or request was obeyed. Ed Mauldin, a witness for the State, testified that he had loaned the gun in question to Fred Opp shortly before the homicide. The circumstances are regarded as sufficient to justify the conclusion that the gun was possessed by the appellant at the time the deceased was shot.

Moreover, Fred Opp was present at the scene of the difficulty, and the testimony of the State was sufficient to support the finding by the jury that he accompanied the appellant and Trimble for the purpose of aiding them in removing the sheep of the deceased from the appellant's pasture.

In one of the bills of exception it is shown that a witness for the State testified that prior to the homicide Fred Opp, in the absence of the appellant, stated to the witness in substance that he (Fred Opp) was expecting trouble. This statement was not made in connection with the getting of any gun had at the time of the difficulty. This testimony is deemed inadmissible and upon another trial should be excluded.

The record presenting this appeal is composed of more than five hundred pages. To a great extent the transcript is filled with argument upon the legal propositions presented by the contending parties. We have not found it necessary to quote further from the record than is disclosed in the remarks heretofore made. Suffice it to say that in our judgment the matters discussed in this opinion sufficiently portray the nature and result of the suit and the disposition of the appeal deemed proper by the members of the court, which is that the judgment should be reversed and the cause remanded. It is so ordered.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State insists that we were in error in holding that argument complained of was a reference to the failure of appellant to testify. It was not the purpose of the court to depart from the holding in Boone v. State, 90 Texas Crim. Rep., 374, 235 S. W., 580, to the effect that to come within the prohibition of the statute the language used must be such that the implication must necessarily be that the language had reference to the failure of appellant to testify. In determining such question the language used must be looked to from the standpoint of the jury as to what their inference would probably be, rather than to the explanation of the party making use of the language as to what he had in mind at the time. The holding in Boone's case has been re-affirmed in Howard v. State, 108 Texas Crim. Rep., 373, 1 S. W. (2d) 289, and Kennington v. State, 120 Texas Crim. Rep., 192, 49 S. W. (2d) 776, in each of which many other cases are cited. Giving effect to the prin-

ciple announced we adhere to the conclusion reached in our original opinion in regard to the matter.

It is next urged that we were in error in holding that the court should have instructed the jury not to consider for any purpose the fact that the telephone wire leading to deceased's house had been cut unless the State had proven beyond a reasonable doubt that appellant or some one acting with him was responsible therefor. The State takes the position that the court sufficiently guarded the matter when he gave the general instruction on circumstantial evidence thereby informing the jury that "In order to warrant a conviction on circumstantial evidence each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt." We are not in accord with the State's contention in this regard. It may be conceded that the fact of the telephone wire having been cut was established beyond a reasonable doubt. That is not the point. The complaint made by appellant is that unless it was shown that he was connected with the cutting such circumstance should not be considered as a criminative fact against him, and that the jury should have been so told. Hocks v. State, 97 Texas Crim. Rep., 480, 261 S. W., 1053; Glenn v. State, 76 S. W., 758; Sawyer v. State, 104 Texas Crim. Rep., 522, 286 S. W., 209; Miller v. State, 122 Texas Crim. Rep., 59, 53 S. W., 790; Wells v. State, 118 Texas Crim. Rep., 355, 42 S. W. (2d) 607; Hughitt v. State, 123 Texas Crim. Rep., 168, 58 S. W. (2d) 509; Nami v. State, 127 Texas Crim. Rep., 403, 77 S. W. (2d) 528.

The present writer entertains doubt whether evidence regarding the cutting of the telephone line should have been admitted, but my brethren have reached a different conclusion. See Fountain v. State, 90 Texas Crim. Rep., 474, 241 S. W., 489.

In our original opinion it was held that the matter complained of in bill of exception number twenty-nine presented error. Said bill brought forward complaint that over appellant's objection the State had been permitted to prove by the witness Lewis Whelles that a few days prior to the homicide Fred Opp, in the absence of appellant, had stated to the witness that he (Fred Opp) was expecting trouble. In the motion for rehearing the State calls attention to the fact which was overlooked by us originally that the evidence of said witness shows that at the time Fred Opp made the statement complained of he was trying to secure from witness some 25-20 caliber cartridges. It further appears from the testimony of said witness that Fred Opp knew that Whelles had bought some cartridges

of that caliber and had used only a few of them. The gun secured by Fred Opp from the witness Mauldin was a 25-20 caliber rifle, which particular rifle was identified as the one had by appellant at the scene of the killing. It being apparent from the testimony of Whelles that at the time Fred Opp made the statement complained of he was trying to secure cartridges which would fit the gun in question we have reached the conclusion that no error occurred in admitting the testimony of the witness Whelles.

In all other respects the State's motion for rehearing is overruled.

*Overruled.*