### E. L. GEORGE v. THE STATE.

No. 19760.   Delivered June 22, 1938.
Rehearing denied October 19, 1938.

The opinion states the case.

*Rogers & Spurlock,* of Fort Worth, and *Walter C. Woodward,* of Coleman, for appellant.

*Will R. Parker,* Criminal District Attorney, and *Leo Brewster* and *H. C. Wade,* Assistant Criminal District Attorneys, all of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Appellant was convicted of the unlawful killing of C. H. Brooks, and awarded a penalty of ten years in the penitentiary.

The record discloses a sordid state of facts, showing that the appellant and his brother were gamblers, the brother being engaged in running some kind of establishment in the city of Fort Worth. There seems to have been some previous trouble between appellant's brother and the deceased, probably over their rival establishments, and some threats and previous ill-will shown between them.

The State's testimony shows that while the deceased was sitting at a table in a cafe drinking coffee, and in company with two waitresses, appellant came up to him, pushed one of the ladies aside, cursed the deceased, and shot at him, which shot probably missed its mark. The deceased then arose and began struggling with the appellant, and was finally shot through the groin by appellant, from which wound he shortly bled to death.

Bill of exceptions No. 1 complains of the testimony of the

witness Agnes Downs, the witness who was sitting by the deceased when he was shot, to the effect: "I saw some blood there, right at Mr. Brooks' feet. It looked like there was about two bucketsful of blood there, just clotted blood, ran right out around his feet, where it had run down his pants leg, and his clothes was wringing wet."

The court qualified this bill as follows: "The defendant entered a plea of not guilty in this case. This witness Agnes Downs, a witness for the State, was the first witness who testified in the trial.

"The second witness who testified in the trial, also a witness for the State, was Dr. J. H. Hook, who testified, among other things, as follows: 'I say he [the deceased] died about ten minutes later. In my opinion the cause of his death was a hemorrhage, from loss of blood caused by the wound I have described. He was bleeding when he came in. There was blood on the cot he was brought in on. The patient's pallor was that characteristic of an individual who has lost a large amount of blood. It was a dead white. In other words, all his color had gone out of his skin.'" There was no objection to any of this quoted testimony given by Dr. Hook. The qualification continues:

"The third witness who testified on the trial was Irma Rightly, also a witness for the State. This witness testified, among other things, as follows: 'Two people who I know by the name of Essie and Totsie, after Mr. Brooks had fallen, were trying to stop the blood, and they had taken most of his clothes off and laid them over in a pile.' None of this testimony was objected to by the defendant."

It would appear to us that the circumstances of the shooting and its immediate effect upon the deceased's person was a part of the res gestae, especially in view of the doctor's testimony that the man died from loss of blood. See Bennett v. State, 252 S. W. 790. It also appears that the matter of a great loss of blood at the actual time of the shooting was gone into without objection from other witnesses, though we do not find an attempted estimate of the amount. If such testimony was admitted from other sources without objection, it would render harmless the complained of statement, if there was any error in its admission, which we do not so hold.

Bills of exceptions Nos. 2 and 3 are respectively to the failure of the trial court to allow appellant's brother, Johnnie George, to testify that: "My brother, the defendant, is and has always

been of a peaceable and quiet disposition," and again "My brother, the defendant, has never at any time been a trouble maker of any character."

These bills were each qualified by the trial court as follows: "There were five witnesses who had already testified for the defendant to the effect that the defendant's reputation for being a quiet peaceable and law-abiding citizen in the community in which he lived was good. The witness, Johnnie George, was not questioned about the reputation of the defendant. The State offered no testimony on the issue as to the defendant's character or reputation."

We think the qualification answers the appellant's complaint, and this objection is overruled.

Bill of exceptions No. 4 complains of the district attorney asking the witness Barnett the following question: "You are nothing but what is known all over as a professional con man, that's true, isn't it?" The appellant's attorney immediately objected, and the court very promptly sustained such objection, and instructed the jury to disregard such question. It appears from the record that the witness had been convicted and sent to the penitentiary for passing counterfeit money, and it seems to us that the prompt instruction of the trial court cured any error, if such there was, in the asking of such question. The appellant and his brother were admittedly professional gamblers, either running an illegal game or working in one, as were most of his witnesses, in open violation of the law,—the appellant himself testifying that he made his living gambling, and in the event of the jury turning him loose, he intended to go back to his gambling; that he was a narcotic addict, and had been such since 1919. We confess ourselves unable to see any serious error in the possible intimation that appellant's witness might be a violator of the law.

Bill of exceptions No. 5 complains of the following proceeding: At the time the district attorney, Mr. Parker, began his closing argument to the jury, Mr. Rogers, appellant's attorney, had made arrangements with the court reporter to take such argument down in shorthand, and, thus observing, Mr. Parker said: "I observe that my friend Rogers is going to the expense of taking my argument down here. Looks like he is expecting to have to appeal this case." Upon objection of appellant's attorney the jury was instructed by the trial court to disregard such argument. In view of such a prompt instruction, we can see no error in such argument.

Bill of exceptions No. 6 complains of the following argument by the district attorney, in his closing address to the jury: "It only shows, gentlemen, to what extent counsel will go in their desperation sometimes. Luther Swanger tells me this man was not mistreated in the slightest degree. You saw him. You saw his demeanor. You saw his countenance. You think he is the kind of man would lie to you about it? I don't believe you are. I wouldn't let a man work for me that long that would mistreat a prisoner. I wouldn't have a statement or ask a jury to consider it if I thought he had been mishandled in any manner, or any third degree methods were used on him." Upon objection the trial court sustained the objection to that part of the argument to the effect that the district attorney would not employ a man who would resort to third degree methods, but that was as far as his instruction went. We find that the careful trial judge included in his charge to the jury an exhaustive charge relative to a purported confession made to an assistant district attorney, Luther R. Swanger, in which he covered every phase relative thereto that was raised by the testimony. He instructed the jury not to consider such statement unless they believed same to have been freely and voluntarily made, and under no persuasion, and under a proper warning, and that no narcotics had been promised to appellant provided he would make such statement, and that he had not been told that such statement could be used for him, etc. In fact the court covered every possible contingency raised in any manner by the appellant's testimony. Mr. Swanger, who took the statement, was placed on the stand and testified, as well as Mr. Howerton, as well as Mr. Harris, who were present when the statement was made by·appellant, all of whom denied any mistreatment of any kind having been administered to appellant at such time.

The latter portion of such argument of the district attorney, while not of great importance in our judgment, was by the trial court withdrawn, the first portion thereof being left for the jury's consideration. In the court's qualification of this bill we find that the argument had been used by appellant's attorney that such statement of the appellant should not be considered by the jury for the reason that the appellant had been coerced into making same, as shown by the evidence. In answer thereto the above quoted statement was made. It can hardly be said that the district attorney was referring to a private conversation had with Mr. Swanger when he used the complained of words. It seems to us that the more reasonable interpretation thereof would be that he was referring to Mr. Swanger's testimony while upon the witness stand before the jury, and that

such is borne out by that which immediately follows the statement relative to what Mr. Swanger told the district attorney: "You saw him. You saw his demeanor. You saw his countenance. You think he is the kind of man who would lie to you about it? I don't believe you are." We are compelled to the conclusion that no error is shown in this matter. We do not think the case of Stiles v. State, 239 S. W. 963, is in point herein. In that case the prosecutor himself testified as to the character of the witness, stating that he knew him, and he was not the kind of man as claimed by the defendant. In the instant case the complained of argument construes itself as referring to what the jury might think of the witness from having observed him and his demeanor on the witness stand. It can easily be inferred from the complained of remarks as is shown by the record that the district attorney had examined Mr. Swanger while he was on the stand, and his remarks referred to what the witness had told the examiner from the stand.

In the light of the record presented to us we see no error therein, and the judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Only two points are stressed in the motion for rehearing. The first arose from an instruction regarding the confession of appellant. The confession was introduced in evidence. The warning purported to have been given by Mr. Swanger, assistant district attorney, preceded the confession, which warning was also before the jury. The court charged the jury not to consider said confession unless they believed from the evidence beyond a reasonable doubt that appellant was warned by Swanger: "first, that he did not have to make any statement at all, and second, that any statement made might be used in evidence against the defendant on a trial for any offense concerning which the statement might be made."

Appellant excepted to such instruction on the ground that it was a comment by the court upon the weight of the evidence in that the court assumed that "an offense had been committed." The warning followed the wording of the statute (Article 727, C. C. P.) and the instruction complained of followed the warning. Under the circumstances we think the charge can not be considered as any comment or assumption by the trial judge. All defensive issues were properly submitted and when regarded as a whole the instruction complained of could in no way have injured appellant.

The second point urged in appellant's motion is that we were in error in disposing of bill of exception number six, which complained of certain argument of the district attorney, which is set out in our original opinion. The motion for rehearing emphasizes as harmful and improper the statement of the district attorney that "Luther Swanger tells me this man [the defendant] was not mistreated in the slightest degree." A re-examination of said bill number six shows that as originally drawn and presented to the trial judge the complaint was directed only at the following language of the argument, viz.: "I would not have a statement or ask a jury to consider it if I thought he [the defendant] had been mishandled in any manner, or any third degree methods were used on him." The qualification to the bill shows that the trial judge did orally instruct the jury not to consider the language last quoted, and the only thing left in the bill was a complaint because the court did not give a written instruction to disregard the language mentioned. In qualifying the bill the trial judge set out the entire language used by the district attorney as shown in our original opinion, and advised counsel that he would only withdraw the part to which the original bill related. Appellant's counsel then reserved exception to the court's action. It is apparent that a part of the argument which the court did not withdraw was unquestionably proper, but the last exception reserved by counsel went to all of the argument which the court had not withdrawn. Under the circumstances we doubt if the bill presents error.

Appellant argues that the statement now stressed, to-wit: "Luther Swanger tells me that this man [the defendant] was not mistreated in the slightest degree," should be regarded by the court as was the argument held erroneous in Opp v. State, 132 Texas Crim. Rep. 221, 103 S. W. (2d) 748. We call attention that in Opp's case it was claimed that the argument violated a mandatory statute against referring to failure of the defendant to testify. Such is not the situation here. If we might assume that the language last quoted referred to some statement made out of court by the witness Swanger to the district attorney then it would still be a quesion as to whether under all the circumstances of the case it should be held reversible error, and we would hesitate to so hold. The record shows that the district attorney was actively engaged in the trial of the case and examined the witness Swanger. The language now stressed as particularly harmful could have referred to what the witness testified, or to some previous statement made by the witness to the district attorney. It not being made to appear that it did

refer to some statement made out of court we reached the conclusion expressed in our original opinion.

Appellant's motion for rehearing is overruled.