### G. W. BRICE v. THE STATE.

No. 2778.   Decided December 10, 1913.

Rehearing denied January 21, 1914.

**1.—Murder—Evidence—Hearsay.**

Where the record showed that the rejected testimony was simply hearsay and if the facts as to the insanity of defendant's father were true, the defendant could have shown this by other testimony, there was no error.

**2.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions accepted and filed by the defendant presented no error, there was nothing to review.

**3.—Same—Evidence—Opinion of Witness.**

Where defendant's witness and defendant were strangers to each other, there was no error in refusing to permit the witness to express an opinion of the acts and conduct of defendant with reference to defendant's sanity.

**4.—Same—Argument of Counsel.**

Where the argument of State's counsel was not of such character as to cause in itself a reversal, and the court instructed the jury not to consider the same, there was no error.

**5.—Same—Evidence—Opinion of Witness—Insanity.**

Where the State's witness testified that he had been intimately associated with the defendant in the transaction of business and had known him a long time, detailing all the circumstances, there was no error in permitting the witness to testify as to defendant's mental condition. Following Burt v. State, 38 Texas Crim. Rep., 397.

**6.—Same—Insanity—Use of Intoxicants—Charge of Court.**

Under article 41, Penal Code, where defendant relied under his plea of insanity upon the recent use of intoxicating liquors, there was no error in refusing a requested charge to acquit the defendant if he was rendered insane by the long continued use of intoxicating liquors in conjunction with the recent use of such liquors.

**7.—Same—Requested Charge—Intent.**

Where the evidence showed that the defendant was shooting the deceased with the intention to kill her, there was no error in refusing a requested charge as to a reckless discharge of firearms without the intention to shoot anyone, as the evidence did not raise this issue.

**8.—Same—Insanity—Charge of Court.**

Where, upon trial of murder, the defendant interposed the plea of insanity by the evidence introduced, and the court correctly charged on the law of insanity as applicable to the facts, there was no error in refusing requested charges on the alleged issue of defendant's former insanity, as this was not raised by the evidence, and there was no reversible error.

**9.—Same—Misconduct of Jury—Motion for New Trial.**

Where the motion for new trial upon the ground of the misconduct of the jury was not supported by affidavit, there was no error in overruling same; besides, the record showed that the trial court, nevertheless, heard testimony and overruled the motion.

**10.—Same—Evidence—Motion for New Trial.**

This court can not consider bills of exception containing the evidence on the hearing of the motion for new trial, unless the same is filed in term time; besides, there was no error. Following Probest v. State, 60 Texas Crim. Rep., 608.

**11.—Same—Statement of Facts—Bills of Exception—Transcript.**

The law contemplates and plainly provides that a transcript of the statement of facts and bills of exception, etc., in a criminal case shall be filed in this court within ninety days after the final judgment has been entered by the trial court; where this is not done, the statement of facts and bills of exception filed three months after the transcript had been filed in this court can not be considered.

**12.—Same—Statement of Facts—Bills of Exception—Filing Back.**

The district judge has no power to order a statement of facts filed back, but it is the duty of the district clerk to file same as of date he received same, and, if not filed within the time fixed by law, it will not be considered by this court.

**13.—Same—Practice on Appeal—Admonition to Officers and Attorneys.**

Clerks of courts will be required to forward the transcript in criminal cases to this court within the time prescribed by law, and if the bills of exception and statement of facts are not filed within such time, they will not be considered.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Barry Miller and Hon. W. L. Crawford, Jr.

Appeal from murder in the second degree; penalty, eighteen years imprisonment in the penitentiary.

The opinion states the case.

*Adams & Pippen* and *Samuels & Adams,* for appellant.—On question of court's charge on insanity caused by the recent use of intoxicating liquors: Scott v. State, 10 Texas Crim. App., 112; Lawrence v. State, 10 id., 495; Heirhalzer v. State, 47 Texas Crim. Rep., 199; Otto v. State, 47 id., 128.

On question of court's charge on temporary insanity: Beaty v. State, 53 Texas Crim. Rep., 432, 110 S. W. Rep., 449; Lawrence v. State, 65 Texas Crim. Rep., 93, 143 S. W. Rep., 636; Benton v. State, 81 S. W. Rep., 742; Edwards v. State, 54 S. W. Rep., 589.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—On a trial for murder, appellant was convicted of murder in the second degree and his punishment assessed to eighteen years in the penitentiary.

In the first two bills of exception filed appellant contends that the court erred in not permitting E. L. Stewart and E. R. Caldwell to testify that "they had heard that appellant's father, before his death, became insane; that something was mentally wrong with him, and that he had hung himself." The court, in approving the bills, states: "The witnesses testified that they knew nothing about the mental condition of defendant's father, nor how he came to his death; that all they knew was simply hearsay rumor." As thus qualified the bills present no error. If such facts were true, the defendant by depositions or otherwise could have adduced the testimony on the trial by persons who knew the facts.

Bill No. 3, the court states, does not present the record correctly, and he refuses to approve the same. As the record is prepared and presented to this court, which is accepted and filed by appellant, the bill presents no error.

The defendant offered to prove by H. I. Sanders that in his opinion appellant was insane at the time he fired the shots. It is shown by the bills that the witness had never met appellant until the time of the tragedy; that witness and appellant were strangers to each other, and this was their first and only meeting. The witness was permitted to detail at length the acts and conduct of appellant, but was not permitted to express an opinion. Under such circumstances there was no error in the ruling of the court.

The appellant objected to some of the remarks of counsel in his opening address to the jury. The objection was sustained, and the court instructed the jury not to consider such remarks, and instructed appellant's counsel to prepare such charge on the matter as he desired. Counsel did so and the court gave such charge to the jury. Under such circumstances the remarks were not of the character to present reversible error.

The court refused to approve appellant's bill of exceptions No. 8 and in lieu thereof prepared and filed a bill which was accepted and filed by appellant. The bill, as prepared by the court, shows Mr. Roark to have been acquainted with appellant for a long time; that he had been intimately associated with him in the transaction of business, and under such circumstances, after detailing all these matters, the witness was properly permitted to testify as to his mental condition. Burt v. State, 38 Texas Crim. Rep., 397, and cases cited in section 539 of Branch's Crim. Law.

Appellant requested the court to charge the jury: "That if you believe from the preponderance of the evidence that the defendant, G. W. Brice, at the time of the homicide was rendered insane by the long continued use of intoxicating liquors in conjunction with the recent use of such liquor, you will acquit the defendant." This is not the law, and the court did not err in refusing the jury such instructions. Article 41 of the Penal Code provides: "Neither intoxication nor temporary in-

sanity of mind, produced by the voluntary recent use of ardent spirits, shall constitute any excuse in this State for the commission of crime. . . ." If appellant was temporarily insane at the time of the commission of the offense, and such condition was induced by the recent use of intoxicants, this would be no defense to the crime. The rule of law stated in the cases cited by appellant,—if one has become permanently insane by the long and continued use of intoxicants, he would not be subject to punishment, would not authorize the giving of the special charge requested by appellant, where he relies on the "recent use of such liquors" to prove temporary insanity. The court fully and fairly instructed the jury on insanity as presented by the testimony.

Special charge No. 2 was not called for by the testimony. If the evidence proves any one fact, it proves that "appellant was not recklessly discharging firearms without the intention to shoot anyone," but that he was shooting at Mrs. Lillian Arant, evidently with the intention to kill her.

Neither was special charge No. 5 called for by the testimony. The testimony does not establish the fact that defendant had ever been insane, but the issues as made were correctly presented by the court to the jury. Special charges Nos. 3 and 4, as requested by appellant, were given.

On the issue of insanity the court instructed the jury: "No act done in a state of insanity can be punished as an offense.

"Every person charged with crime is presumed to be sane—that is, of sound memory and discretion, until the contrary is shown by proof. If under the law as herein given you in charge, and the testimony of the witnesses, the guilt of the defendant has been established beyond a reasonable doubt, it devolves on the defendant to establish his insanity at the time of committing the act, in order to excuse himself from legal responsibility; that is to say, the burden of proof to establish his plea of insanity devolves upon the defendant. If the State has, as before explained, proved the facts which constitute the offense charged in the bill of indictment, your next inquiry will be, has the defendant established by proof his plea of insanity, or has it been established by proof from any source; if it has, the law excuses him from criminal liability, and you should acquit him. The question of the insanity of the defendant has exclusive reference to the act with which he is charged, and the time of the commission of the same. If he was sane at the time of the commission of the crime, he is amenable to the law. As to his mental condition at the time, with reference to the crime charged, it is peculiarly a question of fact to be decided by you from all the evidence in the case, before the act, at the time, and after.

"A safe and reasonable test, in all cases would be, that whenever it should appear from all the evidence, that at the time of doing the act, the defendant was not of sound mind, but was affected with insanity, and such affection was the efficient cause of the act, and that he would not have committed the act but for that affection, he ought to be acquitted. For in such a case the reason would be at the time dethroned and the

power to exercise judgment would be wanting. But this unsoundness of mind or affection of insanity must be of such a degree as to create an uncontrollable impulse to do the act charged, by over-riding the reason and judgment and obliterating the sense of right and wrong, depriving the accused of the power of choosing between right and wrong as to the particular act done.

"Whether the insanity be general or partial, whether continuous or periodical, the degree of it must have been sufficiently great to have controlled the will of the accused and to have taken from him the freedom of moral action, at the time of the commission of the act. Where reason ceases to have dominion over mind proven to be diseased, it then reaches the degree of insanity where criminal responsibility ceases and accountability to the law, for the purpose of punishment, no longer exists.

"Whether degree of insanity existed in the defendant at the time of the alleged crime is the important question on this issue. If it is true that the defendant shot at Lillian Arant and L. F. Jones, or shot at either or both of them, and took the life of the deceased, and at the time the mental and physical faculties were beyond the control of the defendant, or if some controlling mental or physical disease was in truth the acting power within him, which he could not resist, and he was impelled with intent, reason, or purpose, he would not be accountable to the law. If, on the other hand, his mind was sufficiently sound to be capable of reasoning and knowing the act he was committing to be unlawful and wrong, and knowing the consequences of the act, and had the mental power to resist and refrain from its commission, his plea of insanity would not avail him as a defense.

"It is an essential ingredient of murder that the person, to be guilty of that crime, must be one of 'sound mind and discretion'; the meaning of which is that he must have capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he is then doing. Although a man may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequence; if he has a knowledge that it is wrong and criminal, and mind sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for his criminal act. But if the mind was in a diseased and unsound state, to such a degree that for the time being it overwhelms the reason, conscience and judgment, and the defendant in committing the crime acted from an irresistible and uncontrollable impulse, then it would be the act of the body, without the concurrence of the mind. In such case there would be wanting the necessary ingredient of every crime; the intent and purpose to commit it.

"It is not necessary that the insanity of the defendant should be established beyond a reasonable doubt; it is sufficient if it be established to your satisfaction by the weight of preponderance of evidence that is, such and so much as reasonably satisfies you of the existence of insanity

at the time the act was committed. To ascertain the condition of the defendant's mind at the time of the killing, you should look to its condition before that time; his conduct, acts, and all other surroundings; ascertain, if possible, whether his mental condition was such as to enable him to know he was doing a wrongful and unlawful act. Look to his acts, conduct and movements before and on the occasion of the crime, and all other facts in the case, to reach a correct conclusion as to whether the defendant was of sound mind or not.

"In case the jury find from the evidence that the defendant committed the act with which he is charged, but at the time of the commission of the act he was in a condition of mental insanity, as above defined, you will say by your verdict: 'We, the jury, acquit the defendant on the ground of insanity.'

"If you find and believe from the evidence that the defendant was afflicted with any disease and that such disease, taken in conjunction with the long continued use of ardent spirits by the defendant, if any, or in conjunction with the recent use of ardent spirits by the defendant, if any, produce a degree of temporary insanity on the part of the defendant such as would render the defendant insane, as insanity has herein before been defined to you, and that such insanity, if any, existed at the time of the homicide, if any, you will find the defendant not guilty, on the ground of insanity." This presented the issues made by the testimony more favorably than appellant had a right to expect and such charge is not subject to any criticism in appellant's motion for a new trial.

The only other ground in the motion that need be discussed relates to the misconduct of the jury, and that one of the jurymen several years before had been adjudged insane. The motion for a new trial is sworn to by no person, and is supported by the affidavit of no person. A motion that is not sworn to and is unsupported by any affidavit can raise no issue extrinsic the record, and these questions are not presented in a way that the court would be authorized to consider them. However, in acting on the motion for a new trial, the judgment of the trial court shows that he did hear evidence on these grounds in the motion, and he finds:

"After hearing all the evidence upon said motion, the court finds that the jury in this case was guilty of no improper conduct and that the jury did not discuss, allude to or comment upon the failure of defendant to testify. The court also finds from said evidence that the verdict was arrived at and agreed upon in a proper and legal manner, and that no extraneous matters entered in said verdict on the conclusion of the jury in arriving at said verdict.

"The court also finds from said evidence that the juror, Hazelwood, mentioned in defendant's said motion, was not insane while he was on said jury, and is not insane now. The court had said juror before him in person as a witness under oath, on the hearing of said motion, and he was asked many questions, and his answers to same satisfied the court that he was discharged from the asylum several years ago; that he resided in Dallas County ever since and is a land owner, and has carried on

his business ever since with intelligence; that he has good memory and possesses an average amount of intelligence, and the court finds that the verdict of the jury was based solely upon the law and the evidence uninfluenced by any other matter.

"Therefore, each and every ground of the defendant's said motion and the motion as a whole is overruled by the court."

The appellant after the adjournment of the court for the term presents and has filed a bill of exceptions containing the evidence heard at the time the motion for a new trial was acted upon. Under an unbroken line of decisions this court can not consider such bill unless filed in term time. (Probest v. State, 60 Texas Crim. Rep., 608, and cases there cited.) However, we have read this bill and the evidence contained therein; and we are constrained to say that if we could consider the evidence we would not disturb the finding of the trial court thereon.

We have taken up and disposed of every bill of exceptions and ground in the motion for a new trial, but there is another matter we want to again call attention to, so that hereafter there will not be so many affidavits and counter affidavits for us to consider in passing on whether or not we will consider the statement of facts and bills of exception in a case. The law contemplates and plainly says that a transcript in a criminal case shall be filed in this court within ninety days after the final judgment has been entered by the trial court. (Arts. 929, 930, 931 and 934, C. C. P.) The record in this case shows that this case was tried March 25, 1913; that the order overruling the motion for a new trial was entered April 5, 1913; that the clerk made out the transcript within the time authorized by law and forwarded same to this court, containing no bills of exception, nor any statement of facts. Three months thereafter appellant's counsel presented to the clerk the bills of exception and statement of facts and asked that they be filed as within the ninety days, but this the clerk correctly refused to do, and in his filing of the statement of facts he shows that they were not presented to him until October 4, 1913,—six months after the motion for a new trial had been overruled, and three months after the transcript had been filed in this court. In Bryant v. State, 35 Texas Crim. Rep., 394, Judge Hurt took up this question and discussed it at length and held that the district judge had no power to order a statement of facts filed back, but it is the duty of the district clerk to file same as of date he received same, and if not filed within the time fixed by law, it would not be considered by this court. And if the district judge has no such power and authority, certainly the prosecuting officer and the appellant's counsel have no authority to agree that same may be done; and hereafter, statements of facts and bills of exceptions must be filed within the time prescribed by law, and agreements of the parties in criminal cases, and the order of the district judge, will be of no avail if the papers are not filed within the time prescribed by law for so doing. There has been much just complaint about the delay in the disposition of criminal cases, and when the law is examined, it is

not so much the fault of the law, but because of the fact that the law has been ignored. To this we can not give our sanction, and parties are notified that the clerks will be required to forward the transcripts to this court within the time prescribed by law, and if the bills of exception and statement of facts have not been filed within the time fixed by law, they will not be considered. If it is the fault of appellant or his counsel, they must suffer the consequences; and if it is shown to be the fault of the prosecuting officers, the case will be reversed because the appellant has been deprived of a statement of facts. We can not and will not sanction a total disregard of the law merely to suit some persons' convenience.

*Affirmed.*

[Rehearing denied January 21, 1914.—Reporter.]