## R. S. POWELL v. THE STATE.

### No. 4106.    Decided May 31, 1916.

Rehearing denied June 21, 1916.

**1.—Subornation of False Swearing—Sufficiency of the Evidence.**

Where, upon trial of subornation of false swearing, the evidence was sufficient to support the conviction, there was no reversible error.

**2.—Same—Charge of Court—Objections No Fundamental Error.**

Where no objections were made to the charge of the court during trial,. they come too late in a motion for new trial which presents no fundamental error.

**3.—Same—Verdict—Jury and Jury Law.**

Where defendant in his supplemental motion for new trial attacked the verdict because one of the jurors failed to answer questions on his voir dire examination; that one of the jurors discussed matters not in evidence; that another juror was unable to read and write, and that yet another juror agreed to a verdict of guilty because he did not want to have a hung jury, and the affidavits attached to the motion were not introduced in evidence, but the court heard testimony and found that the motion for new trial was not sustained thereby, there was no reversible error.

**4.—Same—Suspended Sentence—Practice in District Court.**

Where defendant pleaded for a suspended sentence, and the court submitted the question to the jury, who in their verdict expressly stated that they did not recommend a suspended sentence, but found defendant guilty of subornation of false swearing, assessing his punishment at two years imprisonment in the penitentiary, after discussing in the jury room the question of suspended sentence pro and con, and finally agreed to said verdict, there was no reversible error.

**5.—Same—Misconduct of Jury—Hung Jury.**

The fact that one of the jurors agreed to the verdict of guilty, because he did not want to have a hung jury would in no way entitle defendant to a new trial, as many verdicts are compromise verdicts.

Appeal from the District Court of Titus. Tried below before the Hon. J. A. Ward.

Appeal from a conviction of subornation of false swearing; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. C. Hutchings,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of subornation of false swearing and his punishment assessed at the lowest.

The great preponderance of the testimony was amply sufficient to sustain his conviction. His testimony alone was almost sufficient to do so.

No objections whatever were made to the court's charge at the time of the trial. In appellant's motion for a new trial he criticizes it in two or three particulars. None of the complaints present any fundamental error. His objections come too late under the express provisions of the recent laws on that subject and the uniform decisions of this court thereunder since then.

In his amended and supplemental motion for a new trial, he attacked the verdict in these particulars: (b) that the juror McKee failed to answer a question on his voir dire examination, which if he had answered would have caused appellant to have peremptorily challenged him; (c) that the juror Stringfellow discussed in the jury room while the jury was considering its verdict that he once had a girl to run away and marry without his consent; (d) that the juror Jenkins was unable to read and write, and he failed to disclose that fact when asked the question by the court in qualifying the jurors; (e) that Morgan agreed to a verdict as rendered because he did not want to have a "hung" jury. As a part of the motion, he attached some affidavits merely as a pleading. These were not introduced in evidence when the court heard the testimony on his grounds of attack. The agreed statement of facts shows that none of them were offered in evidence.

The court heard the testimony in acting on said motions of every juror who sat upon the case. From the whole of it as well as practically each juror, the court was fully authorized to find that none of appellant's contentions were sustained, and that he was correct in overruling the motions. Their testimony disclosed, without any controversy, that soon after the jury retired, and practically without any discussion, they took a vote and unanimously voted appellant guilty. None seemed to hesitate to so vote, and each of them testified that they considered nothing whatever in arriving at their verdict except the evidence introduced and the charge of the court.

It appears that in questioning the jurors on their voir dire examination, they were all questioned together, not singly. It seems among other questions appellant's attorney asked the jury whether or not any of them ever had any trouble in their family or any family of their near relatives as to the running away and marriage of minor children, especially girls. The juror McKee swore he never heard the question—that if he had he would unhesitatingly have answered it to the effect that at one time one of his daughters did run away and got married. His testimony further shows that he had long since become reconciled to that marriage, and that it would have in no way influenced him in

finding a verdict in this case, and did not do so. This would in no way have disqualified this juror from sitting in this case; in other words, it would not have been a cause for challenge. Appellant's attorney is not shown to have pressed the inquiry to this juror any further, but seems to have assumed that because he did not answer that he had had such trouble, he had not had. As shown by the testimony heard on the motion, no error is shown in the court's denying a new trial on that ground.

Appellant properly plead for a suspended sentence. The court submitted the question to the jury. Their verdict expressly stated they did not recommend a suspended sentence. As soon as all of the jurors unanimously agreed and found that appellant was guilty they then took up the question of the number of years they would assess as his punishment and whether or not they would suspend his sentence. Eight jurors were opposed affirmatively to suspending his sentence at all and wanted to fix his punishment at two years. Four at first desired to suspend his sentence. These four wavered at first, some of the jurors expressing a willingness to assess the punishment at five years if they could agree on a suspended sentence. The others refused to do this. It seems that one or more of the four at different times agreed with the other eight not to suspend the sentence. While they were "hung up" on whether or not they would suspend the sentence, Mr. Stringfellow swore that when sitting back with one or two of the jurors, they were talking, and he merely said to them that he had a daughter that ran away with a fellow without obtaining his consent, but she was of age, and it was all right, and he thought well of it. He and all who heard it swore that the remark was not made as an argument against suspension of his sentence, and that it had no effect whatever upon them, but they found their verdict solely on the evidence introduced and the charge of the court. Mr. Stringfellow himself was at first in favor of suspending the sentence, and it seems that some of the others who heard him perhaps were also. The other jurors swore they heard no such remark from Stringfellow, or any other juror. Finally the jurors agreed unanimously on the lowest punishment and not to suspend the sentence, and their verdict so stated. We think none of this shows any injury to appellant and would not entitle him to a new trial. It occurs to us that, if anything, it may have been beneficial to him. At any rate, it presents no ground for reversal.

No proof whatever was offered to show that Jenkins could neither read nor write. His testimony would clearly indicate that he could, though he made no direct answer to that effect and was asked no question on the subject

The fact that Morgan agreed to the verdict as rendered because he did not want to have a "hung" jury would in no way entitle appellant to a new trial. A great many verdicts—in fact, most of them—in cases coming to this court, indicate clearly compromise verdicts; that is. a yielding of first contentions and abandoning them finally thereby

succeeding in the assessment of a lower penalty or some other advantage to an accused.

The trial judge saw the whole conduct of the trial, heard all the testimony thereon, and then heard the testimony of every juror on said motions for a new trial. He, of course, was better qualified to determine the issues of fact raised by the motions than this court can possibly be. His finding and denying a new trial on the grounds set up was amply justified by the whole testimony of the jurors, and this court is in no position to substitute its judgment for his under the circumstances.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 21, 1916.—Reporter.]