MORRIS COLEMAN v. THE STATE.

No. 19601. Delivered April 27, 1938.
Rehearing denied June 22, 1938.

The opinion states the case.

*Cliff Tupper* and *D. B. Hardeman,* both of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment, confinement in the State Penitentiary for a term of forty-five years.

It is charged in the indictment that on or about the 12th day of June, 1937, Morris Coleman, with malice aforethought, did kill Louise Coleman by shooting her with a pistol.

It appears from the record that appellant and the deceased had been married about six months at the time of the homicide. Appellant seems to have been extremely jealous of her and on two previous occasions had mistreated her. About a week prior to the unfortunate affair, appellant struck her on the head with a beer bottle and inflicted painful injuries upon her which caused her to leave him and go to the home of her sister, Garvine Simms. About midnight of June 12, appellant, armed with a pistol, went to Garvine Simms' home and asked to see his wife. Upon being admitted, he asked the deceased to come outside; that he wanted to talk to her about matters which he did not care for the others present to hear. At first she declined to comply with his request but finally did so. When they had been out of the house for only a few minutes, he shot her five times and then fled from the scene. He was apprehended by the officers on the following night.

By bill of exception number one, appellant complains of the following remarks by the district attorney in his closing argument: "Now they talk about the State and its officers coming out with a confession and say you can bet your bottom-dollar that the State will have a confession. Well, gentlemen the only way I know how to find out about anything is to ask the fellow who knows about it and the minute one of these attorneys enters the case you couldn't prize his client's mouth open with a crowbar."

Appellant objected to the argument on the ground that it was a reference to his failure to testify. We do not so regard it. Counsel for appellant was discussing appellant's confession and the time and manner in which it was obtained. It appears that the confession was obtained at a time when appellant had not

yet retained counsel. Consequently, the district attorney, in reply to the criticism of appellant's counsel, made the remarks complained of. The district attorney was not, as we understand the record, referring to appellant's failure to testify, but to the fact that no confession could be obtained after the attorneys in the case were employed. It was merely a discussion of the time and manner of obtaining the confession and not his failure to testify. Such, we believe, is the only logical conclusion to be drawn therefrom. Especially is this true when the subject of discussion and the surrounding facts are considered together. See Boone v. State, 90 Texas Crim. Rep. 374; Gaskin v. State, 119 Texas Crim. Rep. 223; Opp v. State, 103 S. W. (2d) 748.

By bill of exception number two, appellant complains of the action of the court in overruling his motion for a new trial based upon the alleged misconduct of the jury. Appellant offered the testimony of three jurors in support of his allegations. Mr. Drennan, one of them, testified in substance: "I heard a statement by some member of the jury, don't know who it was, that 'if we don't give him more than 25 years, he will be back in seven or eight years and may shoot some other folks.' "

Fred Simmons testified to the same effect. B. F. Meckel testified: "I heard a statement made by some member of the jury: 'He is just a negro, let's send him up; if we give him 25 years, he will be back in seven or eight years and may shoot some other folks.' "

It is noted that all three of these jurors testified that they tried him exactly as they would have a white man; that they based their verdict upon the evidence from the witness stand and the law submitted to them by the court. Hence, no prejudice on the part of the jurors against appellant was shown. Their verdict is not such as would indicate prejudice, for they assessed his punishment at forty-five years when, under the law and the evidence, they could have assessed his punishment at death or ninety-nine years. In support of what we have said, we refer to the case of Foster v. State, 100 S. W. 1159.

Appellant has cited a number of authorities which he contends support his contention. We have examined all of them and find that they are distinguishable from the case at bar by the facts involved.

Moreover, it appears to us that it was an attempt to impeach the verdict of the jury. We have many times held that a jury could not impeach their verdict. See Chant v. State, 73 Texas

Crim. Rep. 345; Powell v. State, 187 S. W. 334; Watson v. State, 199 S. W. 1113.

Furthermore, the motion for a new trial is not sworn to. See Brice v. State, 72 Texas Crim. Rep. 219; Gorrell v. State, 164 S. W. 1012.

All other matters complained of by the appellant have been examined by us and are deemed to be without merit.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his complaint of the argument of the district attorney, and also of the alleged misconduct of the jury.

We do not care to discuss further the argument, but are convinced upon re-examination of the bill that the argument did not refer to the failure of appellant to testify as a witness in the case, but referred solely to his confession.

In his motion for rehearing appellant lays great stress on the statement claimed to have been made by one of the jurors during the deliberations of the jury that appellant was "just a negro anyway"; drawing the conclusion therefrom that appellant did not receive that fair and impartial trial guaranteed to him by the Constitution. Vernon's Ann. St. Const., Art. 1, Sec. 10. We observe that in the motion for new trial there was no averment that any prejudiced juror sat upon the trial, but it is argued that the misconduct of the jury showed that they were indifferent towards appellant by reason of his race. The testimony of the jurors taking on the hearing of the motion for new trial is brought forward in the statement of facts, and we observe that only four jurors were examined. We think the trial judge would have been justified in concluding that nothing was said by the jurors in their argument about appellant being a negro.

Mr. Drennan, the first juror examined, testified as follows: " * * * I heard some statement made by some member of the jury, I don't know who it was said it, that if we don't give him

more than 25 years he will be back in 7 or 8 years, or something, but I didn't hear anything said about him being just a nigger. What I heard was that just give him 25 years he would be back soon, but I never heard anything mentioned about him being a nigger or anything of that kind. I did not hear anything said generally to the effect that the defendant, being a nigger, should not be given the same consideration as a white man or that if we sent him away that it would be just one more nigger out of the way. * * * ."

Mr. Simmons was asked the following question by appellant's counsel: "I will ask you, now, if there were any statements made in the jury room carrying this kind of meaning; that while the defendant is just a nigger let's send him on up, if we give him 25 years he will come back in seven or eight years and shoot some other folks?"

The juror answered the question as follows: "I remember hearing some member of the jury say something—I don't know who it was—make the last part of that statement, but not the first part. The statement I heard was to the effect that if we give him 25 years he will be back in seven or eight years and kill some white man * * * ."

The next juror was Mr. Meckel. The statement of facts does not give the form of the question propounded to this juror, but he testified as follows: " * * * I heard a statement similar to or like the following statement, made in our deliberations in the jury room; that the defendant is just a nigger, let's send him on up, if we give him 25 years he will be back in some seven or eight years and may come back here and shoot some other folks. That statement was made."

He was then asked: "Just state in your own words, as you recall it, what that statement was—I don't know that I have it just right."

Witness answered: "It was just about what you said. They didn't want to agree on giving him as short a sentence as 25 years, which was suggested at the time and if they didn't give him more than that he would be back here in a short while, in Sonora here, and maybe kill somebody else."

It is apparent from the testimony of Mr. Meckel that the idea that the defendant was "just a negro" may have been injected into the question by appellant's attorney, but when asked to state in his own language just what was said he omitted any reference of that kind, and the other jurors examined failed entirely to affirm that such a statement was made. In fact, their testimony is to the contrary. The argument arose in the jury

room with reference to the number of years which should be assessed against appellant for killing his wife, and seems to have been purely speculative on their part as to what would happen in the event they gave the appellant a short sentence.

We quote from 31 Tex. Jur., page 321, as follows: "Moreover, jurors may not be interrogated as to the arguments used in their deliberations, and as to the influence of such arguments upon their minds." Many authorities will be found cited under the text in Note 16 supporting the quoted statement.

We think the trial judge and this Court as well would be unauthorized to reach the conclusion that in the deliberations of the jury any provisions of the Constitution of the United States or of the State of Texas were violated.

In his motion for rehearing appellant apparently regarded what was said in the jury room in the way of argument or discussion as new testimony received after the jury retired to deliberate on the case. We do not so construe it. The jurors were bound to have known that appellant was a member of the negro race, and even if anything had been said by any juror about him being a negro it would not have advised them of any fact in regard to which they were not already informed.

Appellant appears to rely largely upon the case of Gilford v. State, 92 S. W. 424. A reading of that case will reveal that many things were discussed in the jury room which did convey to members of the jury information which they did not have at the trial. In that respect we regard it as entirely different on the facts from the present case.

Those cases cited by appellant in his motion for rehearing which call attention to the holding of this Court with reference to the effect of evidence received by the jury after they have retired to deliberate upon the case are recognized by the Court as binding, and as announcing correct propositions of law, but we think they have no application to the present state of facts.

Believing that a correct disposition was made of the case originally, the motion for rehearing is overruled.