IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-021-CR





JOHN MARK IVANOSKI,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL

DISTRICT


NO. 88-206, HONORABLE CHARLES R. RAMSAY, JUDGE



 





PER CURIAM


 Appellant was convicted by a jury of the offense of
indecency with a child after a plea of not guilty. Tex. Pen. Code
Ann. § 21.11 (1989). Punishment was assessed by the trial judge at
ten years imprisonment. We will affirm the conviction.

 Appellant argues that the trial court erred in granting
the State's challenge for cause of veniremember Wade. The trial
court is afforded broad discretion in ruling on a challenge for
cause by the State, and such ruling will not be disturbed absent an
abuse of discretion. Smith v. State, 641 S.W.2d 248, 249 (Tex. Cr.
App. 1982); Noah v. State, 495 S.W.2d 260, 264 (Tex. Cr. App.
1973). When the issue concerns exclusion of a qualified
veniremember, only the examination of the individual veniremember
need be in the record. Payton, 572 S.W.2d 677, 680 (Tex. Cr. App.
1978).

 During the general voir dire, the following relevant
exchanges occurred between veniremember Wade and the State: 


 WADE: I know both the defendant and Rae Anne [the 
 victim's mother and the defendant's former wife].


 MR. KRAMPITZ: How do you know the defendant, Mr. 
 Wade?


 WADE: I've counseled both of them.


 ....

 

 MR. KRAMPITZ: In what capacity?


 WADE: I teach Sunday School, so I was asked by some 
 people to try to help.

 

 ....

 

 MR. KRAMPITZ: Mr. Wade, have you formed any kind of 
 opinion?


 WADE: I'm afraid I have.


 MR. KRAMPITZ: You have?


 WADE: Yes, sir.

 

 ....

 

 MR. KRAMPTIZ: So, Mr. Wade, essentially what 
 you're saying is that you couldn't serve as a juror?


 WADE: I would try to be fair, but I just--I think I've got too much information.


 MR. KRAMPTIZ: I'll tell you what, Mr. Wade, I'm going to go ahead and put a little star here by your name
 and perhaps when we're finished we can take this up in front of the Judge, if that's okay with you.


 WADE: Sure.


Then, after the panel retired from the courtroom:


 MR. KRAMPITZ: Mr. Wade, during our general voir dire discussions here a little while ago in the court, you indicated that you've counseled both the defendant and his ex-wife; is that right?


 WADE: Yes, sir.


 MR. KRAMPITZ: And is that counseling in the course of spiritual counseling?


 WADE: That and marriage counseling.


 MR. KRAMPITZ: Okay.


 WADE: I was aked by, I guess it was, one or another
 attorney at the time because she knew I was a Christian and wanted me to step in and see if I could help them any. And I talked to both sides.

 

 ....


 And my problem is I've seen them not only lie to me and each other, but viciously use the kids against each other.


 And I've got -- you know, I don't know where the football
 is right now, but I would have trouble because of my knowledge of Rae, of really believing that the child was put up to this.


 MR. KRAMPITZ: Okay. So really your problem with this case is not so much with the defendant, but your problem is that the suggestibility, let's say, of a small
 child and whether or not that child was used as a pawn in
 the case?


 WADE: Yes, and so viciously used as a pawn in the case to hurt one another. I've gone deeply psychologically into one another. I know their childhood and some of the reasons they're like this and I just think I know too much about it. I've tried to counsel both of them and the reason I didn't want to say some of this in front of these other people is I didn't want to bias them against you --


 MR. KRAMPITZ: I understand.


 WADE: -- because I have seen John make some good strides that looked like they were positive and not so on
 the other side. And I come into your court this way.


 MR. KRAMPITZ: All right. Well, essentially, Mr. Wade, I guess in a way you have perhaps a bias at least on one-half of this couple, that being the mother of the victim, and I think you've indicated to the Court that because of that you may not be able to give that witness's testimony the unbiased look that you might of somebody who had no idea or no knowledge of. Would that be a fair way to put it?


 WADE: I would look at it as well as I could, but I sat there the whole time you were doing your dissertation, if trying to see once she got up there, I could handle this as if she came up with it on her own, and I just can't do it.


 MR. KRAMPITZ: All right. We will challenge for cause, Your Honor.


 MR. BEHRENDT: May I question this witness, Your Honor?


 THE COURT: Yes.


 MR. BEHRENDT: Now, Mr. Wade, you said you counseled
 both John Ivanovski [sic] and Rae Ivanovski [sic]; is that correct?


 WADE: Yes, sir.


 MR. BEHRENDT: You have not counseled Lindsey L.[sic]?


 WADE: No.


 MR. BEHRENDT: You've never interviewed her or anything?


 WADE: No. I've seen her there at the house at one time or another.


 MR. BEHRENDT: So in terms of the allegations against Mr. Ivanovski [sic], the first you're going to hear that it happened is in terms -- from the person is going to be right here from the witness stand, correct, from Ms. L.[sic], the little girl?


 WADE: I've already discussed it with John. He told
 me about it.


 MR. BEHRENDT: I understand, but what I'm getting at
 is the first time you've heard the story or the incident from the victim is going to be from the witness stand, right?


 WADE: Yes, sir.


 MR. BEHRENDT: You've never heard her relate that story personally?


 WADE: No, sir.


 MR. BEHRENDT: Okay. Now, do you feel that if you're selected to serve on this jury and the Court instructs you that you are to decide the case solely on the evidence presented in court, do you feel that you can
 listen to the incident that you've now told the Court that will be the first time you've heard from her about it, that you can look at her demeanor, listen to what she
 has to say, and assess her credibility in determining whether or not you're going to believe her testimony solely from what you believe there?


 WADE: I have a doubt about that. That's my problem. I work with kids all the time, all the way from
 third grade to 12th grade, and they can be pretty deceptive, especially if they're convinced by one parent or the other that they should do something for a particular benefit.


 I've got six daughters myself and I've seen them react to
 their boyfriends and come home and say things that were because their boyfriends convinced them that they should rebel against this, that their parents were wrong.

 

 MR. BEHRENDT: I don't have any further questions.


 MR. KRAMPITZ: I don't have anything further.


 THE COURT: You may be excused. Thank you very much.


 

To preserve error appellant properly objected to the court's ruling 

and demonstrated that the State exercised all of its peremptory 


challenges on other veniremembers. Payton, 572 S.W.2d at 680; 


Smith, 641 S.W.2d at 249, n.1. 


 Article 35.16(a) provides:

 A challenge for cause is an objection made to
a particular juror, alleging some fact which
renders him incapable or unfit to serve on the
jury. A challenge for cause may be made by
either the state or the defense for any one of
the following reasons:

 

 ....

 

 (9) That he has a bias or prejudice in favor
of or against the defendant....


Tex. Code Cr. P. Ann. art. 35.16(a)(9) (1989). Under this
provision it is not necessary to show a particular prejudice in
favor of or against the defendant. It is sufficient that the
veniremember state that he cannot be a fair or impartial juror. 
Smith, 641 S.W.2d at 249. Veniremember Wade indicated he did not
feel he could be impartial. On the record before us, we cannot say
the court abused its discretion when it dismissed him from the
panel. Appellant's first point is overruled.

 By his next two points of error, appellant challenges the
court's exclusion of testimony from the victim, Lindsey L., and
Lockhart police officer Jim Gillis concerning an incident in
February 1989, in which the victim and a friend of hers alleged
that a third person committed an act of sexual indecency on them.
The victim's friend retracted the accusation, but the victim did
not. Appellant's counsel told the court that he wanted to present
this evidence to the jury "with the idea that the testimony
reflects on the credibility of" the victim.

 Specific instances of conduct of a witness, other than
conviction of a crime, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence for the
purpose of attacking or supporting his credibility. Tex. R. Cr.
Evid. Ann. 608(b) (Supp. 1990). This rule has been held to mean
that proof of either mere accusations or specific acts of
misconduct is inadmissible to affect the credibility of the accused
or any other witness. Alexander v. State, 740 S.W.2d 749, 763
(Tex. Cr. App. 1987). Rule 608(b) allows for no exceptions. See
Ramirez v. State, No. 285-89, Tex. Cr. App., October 31, 1990 (not
yet reported). Nevertheless, appellant cites Thomas v. State, 669
S.W.2d 420 (Tex. App. 1984, pet. ref'd), and Rushton v. State, 695
S.W.2d 591 (Tex. App. 1985, no pet.), both decided before the Rules
of Criminal Evidence were adopted, to support his argument that the
victim's conduct is admissible to attack her credibility. 

 Thomas and Rushton hold, respectively, that a defendant
accused of sexual misconduct may impeach the testimony of her
accuser with evidence that she had made accusations of sexual
misconduct on other occasions and subsequently: (1) admitted that
they were false, or (2) denied making them. Assuming these
principles are still viable under Rule 608(b), they are not
applicable in this cause. There is no evidence in the record that
Lindsey subsequently admitted her other accusation was false or
that she denied making the other accusation. We hold that the
trial court did not abuse its discretion in excluding the evidence
of Lindsey's specific acts of conduct when offered to attack her
credibility. Appellant's second and third points are overruled. (1) 

 Next, appellant argues the trial court abused its
discretion when it permitted the State to recall him to the witness
stand for further cross-examination after the State passed the
witness, and no further questions were asked of him by defense
counsel. The decision to admit evidence at any time before
argument closes is left to the discretion of the court and will not
be reversed on appeal unless there has been an abuse of discretion. 
Hamilton v. State, 150 S.W.2d 395 (Tex. Cr. App. 1941). A trial
court is required to permit testimony at any time before the cause
is concluded if necessary to the administration of justice. Tex.
Code Cr. P. Ann. art. 36.02 (1981); see also, Castillo v. State,
494 S.W.2d 844, 846 (Tex. Cr. App. 1973). The cause before the
court was not concluded. Neither the State nor the defense had
closed. Whether admission of the testimony was necessary to a due
administration of justice is for the trial court to determine. Our
review of the record discloses no abuse of discretion by the trial
court when it allowed appellant to be recalled for further
questioning. 

 By the same point of error, appellant attacks the State's
line of questioning on recall as an attempt to raise "collateral
offenses" for the purpose of impeachment. On direct examination of
appellant, the following testimony occurred:


 Q: John, could you tell this jury and this Court whether or not you ever did what they say you've done?


 A: No, sir. I've never committed an offense or even thought of an offense of this type, of any kind. No, sir, I sure haven't.



On recall of appellant to the witness stand, the following line of
questioning occurred:


 Q: I believe you testified that you had never committed an offense like that or anything else; is that correct?


 A: Yes, sir.


 Q: Is it your testimony that you've never committed
 any other offense?


 A: No, sir.


 APPELLANT'S COUNSEL: Objection, Your Honor. He's attempting, by cross-examination, to raise a collateral matter and perhaps intend to impeach him, and I object on
 the basis of that.


 THE COURT: Overrule the objection.


 APPELLANT'S COUNSEL: Note our exception, Your Honor.


 Q: So it was not your testimony then that you have never committed any other offense?


 A: Repeat the question again.


 Q: It was -- then I must have been confused when I heard you say you didn't commit any other offense.


 A: Oh, I have committed some offenses, yes, sir.


 Q: Which ones were those?


 APPELLANT'S COUNSEL: Objection, Your Honor.


 THE COURT: Approach the bench please.



The State thereafter abandoned this line of questioning. The general rule is that a party is not entitled to
impeach a witness on a collateral matter. The test as to whether
a matter is collateral is whether the cross-examining party would
be entitled to prove it as a part of his case tending to establish
in this instance, the charged offense. Ramirez, No. 285-89; see
also Bates v. State, 587 S.W.2d 121, 133 (Tex. Cr. App. 1979) (test
when defendant is cross-examining party is whether he would be
entitled to prove it as part of his case tending to establish his
plea). When a witness is examined on a collateral matter, the
cross-examining party cannot then contradict the witness. Bates,
587 S.W.2d at 133 (emphasis addded). 

 The subject of whether appellant had ever committed an
offense of any kind was first broached by appellant during his
testimony on direct examination, at which time he denied commission
of any previous offense. Prior to adoption of the Rules of
Criminal Evidence, this response would have triggered an exception
to the general rule, opening the door to the State's line of
questioning on cross-examination. See Nelson v. State, 503 S.W.2d
543 (Tex. Cr. App. 1974)(witness who creates false impression of
his "trouble" with police may be impeached by evidence of prior
misconduct). We need not rely on this exception, because the State
did not contradict the witness. The State simply asked the
appellant what he had said on direct. By his response, the
appellant contadicted his previous statement given on direct
examination. The State made no attempt to introduce independent
evidence of other offenses for the purpose of impeachment. Hoffman
v. State, 514 S.W.2d 248, 252 (Tex. Cr. App. 1974). If the court
erred in allowing this line of questioning, such error was
harmless. Appellant's fourth point is overruled.

 Next, appellant argues that the court erred in denying
his requested jury instruction concerning the length of time
between the victim's "outcry" and the alleged date of the offense
for the purpose of the jury's assessment of the weight to give the
victim's testimony as required by Tex. Code Cr. P. Ann. art. 38.07
(Supp. 1991). However, the victim was, at the time of the offense,
younger than fourteen years of age. Article 38.07 by its terms
does not apply in such a case, and the trial court was correct in
refusing the instruction. Appellant's fifth point is overruled.

 In his next two points of error, appellant contends the
trial court erred by refusing to allow him to question two jurors
more completely concerning discussions during jury deliberations
that appellant contends contributed to the jury's reaching its
verdict in a manner violative of Tex. R. App. P. 30(b)(3), (8). (2) 
The State responds that the jurors' testimony was improper under
Rule 606(b) of the Rules of Criminal Evidence. 

 Rule 606(b) states:


 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant
 to the validity of the verdict or indictment. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.



Tex. R. Cr. Evid. Ann. 606(b) (Supp. 1990). Appellant argues the


testimony related to matters "relevant to the validity of 


the verdict" and, therefore, was admissible under the exception 


contained within Rule 606(b).

 The scope of the exception contained in Rule 606(b) has
been the subject of both various court opinions and commentary. 
E.g., Rose v. State, 752 S.W.2d 529, 556 (Tex. Cr. App. 1988)
(concurring opinion) (exception negates what facially appears to be
a complete bar against a juror relating any statement made during
deliberations); Reese v. State, 772 S.W.2d 288, 291 (Tex. App.
1989, pet. ref'd)(juror may testify about any matter as long as it
is relevant to the verdict); Goode, Wellborn & Sharlot, Texas Rules
of Evidence, § 606.3 (1988)(rule places no independent limits on
the ability of jurors to attack the validity of a verdict or
indictment; they may testify as to any relevant matter). The key
to determining the scope of the Rule 606(b) exception is to
determine what constitutes a matter "relevant to" the validity of
the verdict or indictment. Hernandez v. State 774 S.W.2d 319, 325
(Tex. App. 1989, pet. ref'd). 

 In this regard, it has been held that the exception is
meaningful only as a reference to Rule 30(b) and the case law
developed under its predecessor setting out the grounds for a new
trial. Buentello v. State, 770 S.W.2d 917, 918 (Tex. App. 1989,
pet. granted); Hernandez, 774 S.W.2d at 324-25. A motion for new
trial is the procedural vehicle for bringing to the court's
attention instances of jury misconduct. Prior to September 1,
1986, the effective date of Rule 606(b), grounds for a new trial
were found in article 40.03 of the Texas Code of Criminal
Procedure. 1965 Tex. Gen. Laws, ch. 722, § 1, art. 40.03, at 476
[Tex. Code Cr. P. Ann. art. 40.03, since amended and repealed]. 
The substance of that former article is now found in Rule 30(b) of
the Texas Rules of Appellate Procedure. Rule 30(b) and case law
developed under former article 40.03 provide for a new trial for,
inter alia, enumerated instances of jury misconduct. Buentello,
770 S.W.2d at 918; Hernandez, 774 S.W.2d at 324. 

 We hold that a "matter relevant to the validity of the
verdict" is a matter relevant to a ground for new trial. 
Therefore, under Rule 606(b), a juror may testify to any matter
relevant to a motion for new trial based on a claim of jury
misconduct under Rule 30(b)(3) or (8). Additionally, because
subsections (3) & (8) of Rule 30(b) are derived from and
substantially identical to former article 40.03 (3) and (8), we
conclude that opinions predating the criminal evidence rules
continue to be relevant in those cases. (3) We turn now to
appellant's allegations of jury misconduct.

 Juror Castillo testified at the hearing on the motion for
new trial that, during its deliberations, the jury discussed that
the victim would have to undergo the ordeal of another trial if it
could not agree to a unamimous verdict. Juror Bowers testifed
that, during jury deliberations, she expressed doubts about the
appellant's guilt. Appellant's attorney also alleged that juror
Bowers had communicated the belief that appellant, if not guilty of
the charged offense, was guilty of other crimes for which he needed
to be placed on restrictions. However, at the hearing on the
motion for new trial, Bowers testified that she did not recall
making such a statement. 

 Assuming that the desire to avoid a retrial influenced 
Castillo's vote and that Bowers concurred in the verdict despite a
belief that appellant was not guilty, neither juror may impeach the
verdict with such testimony. Hill v. State, 493 S.W.2d 847, 848-49
(Tex. Cr. App. 1973); Arnold v. State, 186 S.W.2d 995, 998-99 (Tex.
Cr. App. 1945); Powell v. State, 187 S.W. 334, 335 (Tex. Cr. App.
1916). There is a distinction betweeen acts of jury misconduct and
the mental processes of jurors. (4) Under Rule 606(b), jurors remain
incompetent to impeach their verdict by affidavit or testimony
about their mental processes during deliberations except where
relevant to an overt act of jury misconduct. Buentello, 770 S.W.2d
at 918; Hernandez, 774 S.W.2d at 325; see also, Daniels v. State,
600 S.W.2d 813, 816 (Tex. Cr. App. 1980). Where misconduct has not
been established, testimony concerning mental processes remains
inadmissible. See Daniels, 600 S.W.2d at 816. We hold that the
allegations in appellant's motion for new trial, even if true, do
not constitute jury misconduct, but rather an impermissible attempt
to impeach the jury's verdict. The trial court did not err in
excluding further testimony regarding the juror's deliberations and
mental processes. Appellant's sixth and seventh points of error
are overruled.

 Appellant alleges that the trial court erred in
overruling his motion for new trial based on the special
prosecutor's alleged violation of a court order disqualifying the
Caldwell County District Attorney's office from participating in
appellant's trial because one of the prosecutors had previously
represented appellant in this cause.

 Appellant's original court-appointed counsel, Mr.
Glazier, withdrew from the case and began employment as an
assistant district attorney in January 1989. In a motion to
disqualify opposing counsel, appellant requested that Glazier and
any attorneys employed by the district attorney's office, including
the district attorney, be disqualified from prosecuting appellant
and that the court appoint a special prosecutor. The basis for
this request was that Glazier had obtained confidential information
while representing appellant, and that prosecution by him or any
other attorney in the district attorney's office constituted a conflict of interest. The court issued an order disqualifying
Mr. Glazier and the office of the district attorney from
prosecuting appellant's case. 

 Thereafter, at the request of the special prosectuor, an
investigator for the district attorney's office contacted a witness
in the case and asked her for what purpose she had been subpoenaed. 
The witness indicated she would be testifying about biographical
data and things favorable to appellant. The investigator relayed
this information to the special prosecutor. The same investigator
also passed notes to the special prosecutor during the course of
the trial. The content of these notes is not revealed in the
record. Appellant argues that the actions of the special
prosecutor and the investigator violated the court's order,
amounted to prosecution by the district attorney's office, and
contributed to appellant's conviction and punishment in violation
of due process of law under the federal and state constitutions.

 The district court was without legal authority to
disqualify the district attorney and his entire staff. State of
Texas ex rel. Eidson v. Edwards, 793 S.W.2d 1, 5 (Tex. Cr. App.
1990). Additionally, appellant's motion to disqualify requested
that attorneys employed by the district attorney's office be
disqualified from prosecuting this case. Appellant received the
relief he requested and does not complain that any attorney
affiliated with the district attorney's office violated the order. 
To the extent the investigator's actions violated the court's
order, appellant may not complain, since he did not request that
the district attorney's nonattorney staff be disqualified.

 Finally, appellant was not harmed by the actions of the
special prosecutor or investigator that are alleged to have been in
violation of the court's order. The investigator testified she and 
Glazier did not at any time share information concerning
appellant's case. The special prosecutor testified that he and
Glazier did not exchange any information about the case. He
further testified that he did not request that anyone at the
district attorney's office converse with Glazier concerning
information he might have about the case. Finally, the special
prosecutor stated that, despite the investigator's contact with a
witness and report to him about that contact, he did not know there
would be reputation testimony offered. He testified that his
"have you heard" questions were part of his preparation in any
case. 

 There is no evidence that any confidential information
was exchanged between the district attorney's office and the
special prosecutor. Nor do we find a conflict of interest or the
appearance of impropriety based on the actions of the investigator
or the special prosecutor. There is nothing to indicate that the
actions complained of contributed to appellant's conviction or
punishment. Appellant's eighth point is overruled.

 Lastly, appellant complains that the trial court erred in
denying his motion for continuance based on the absence of a
witness, Elva Enriquez. It is appellant's burden to show that the
trial court's failure to grant a continuance harmed him. Such a
showing is made by establishing with some degree of reliability
that the missing witness would have testified to something material
and beneficial to the accused. Parson v. State, 271 S.W.2d 643,
655 (Tex. Cr. App. 1954). In the absence of an affidavit of the
missing witness attached to the motion for continuance, appellant
must make such a showing in his motion for new trial. Otherwise,
the court might reasonably conclude that the witness would not have
so testified. Id.

 Appellant did not attach the missing witness's affidavit
to the motion for continuance or the motion for new trial. 
Appellant merely recites: (1) that Enriquez was the caseworker for
the victim's mother when she and the victim stayed at the women's
shelter during or after the alleged crime; and (2) that Enriquez
could testify about the victim's making or not making an "outcry"
and the defendant's behavior toward her about the time of the
alleged incident. Such a recital is insufficient.

 In any event, none of the facts "expected to be proved
by" the missing witness is material to the case or can be said to
benefit appellant. Assuming all such facts had been proved, they
have no relevance to a material issue in the case. That Enriquez
was the caseworker of the mother or that the victim and her mother
stayed at the shelter during or after the incident of child sex
abuse is neither material nor beneficial to the accused. Likewise,
appellant does not show how evidence of "outcry" or lack thereof,
or the defendant's behavior toward the victim around the time of
the crime, is material or benefits the accused. Appellant has
wholly failed to show how he was harmed by the trial court's denial
of his motion for continuance. We overrule the ninth point of
error.

 The judgment of conviction is affirmed.



[Before Justices Powers, Aboussie and Kidd]

Affirmed

Filed: March 13, 1991

[Do Not Publish]
1. Appellant also argues that evidence of Lindsey's conduct was
admissible under Tex. R. Cr. Evid. 404(b) (Supp. 1990). However,
this rule deals with acts committed by the defendant himself. See 
Stafford v. State, 758 S.W.2d 663, 670-71 (Tex. App. 1988, no
pet.); See also, United States v. Johnson, 872 F.2d 612, 623, n.11
(5th Cir. 1989); Goode, Wellborn, & Sharlott, § 404.6 (Supp. 1990).
2. Rule 30(b) recites: 


 A new trial shall be granted an accused for the following reasons:

 

 ....


 (3) Where the verdict has been decided by

 lot or in any other manner than by a fair

 expression of opinion by the jurors;


 .... 


 (8) Where the court finds the jury has engaged in such misconduct that the accused has not received a fair and impartial trial;


Tex. R. App. P. Ann. 30(b)(3), (8) (Supp. 1990).
3. Buentello, 770 S.W.2d at 919; Hernandez, 774 S.W.2d at 324-25
(the law in the area of jury misconduct was not changed by Rule
606(b)); Austin v. State, 748 S.W.2d 546, 555 (Tex. App. 1988, pet.
ref'd)(dissenting opinion)(rule codifies prior law). 
4. Hernandez, 774 S.W.2d at 325 (juror may testify about an
overt act of jury misconduct, but not about statements made during
jury deliberations, or anything on his mind, influencing him to
assent to the verdict); Austin, 748 S.W.2d at 554-55 (overt acts
may be received, mental processes may not).